# FEBRUARY, 1942

### F. A. SMERKE V. OFFICE EQUIPMENT COMPANY ET AL.

No. 7728. Decided December 31, 1941.
Rehearing overruled February 4, 1942.
(158 S. W., 2d Series, 302.)

*Thompson & Barwise, Rogers & Spurlock,* all of Fort Worth, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the argument complained of was prejudicial and reversible because it was not harmful, and if harmful it could have been cured by an instruction of the court to disregard it, and no objection having been made at the time, it was too late to raise the objection in a motion for new trial. Robbins v. Wynne, 44 S. W. (2d) 946; Peden Iron & Steel Co. v. Claflin, 146 S. W. (2d) 1062; Seinsheimber v. Burkhard, 93 S. W. (2d) 1231.

*Strasburger, Price, Holland, Kelton & Miller,* of Dallas, and *Todd, Crowley & Thompson,* of Fort Worth, for defendants in error.

A statement by plaintiff's counsel regarding the conduct of defendant's counsel during the trial, constitutes such improper argument as to require a reversal of the case since such argument is not relevant to any proper issue in the case and was nothing more than an improper appeal to passion and prejudice. Traders & Gen. Ins. Co. v. Crouch, 113 S. W. (2d) 650; Proctor v. Cisco & N. E. Ry. Co., 277 S. W. 1047; San Antonio Service Co. v. Smith, 57 S. W. (2d) 179.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit for damages brought by plaintiff in error, F. A. Smerke, against defendants in error, Office Equipment Company and William C. Davis, Sr., for injuries alleged to have been sustained by his wife, for loss of her services and for damage to his automobile in a collision between his said

automobile driven by Mrs. Smerke and another driven by Davis, as agent of Office Equipment Company. A jury verdict on special issues resulted in a judgment for plaintiff for $3,500.00, from which the defendants appealed to the Court of Civil Appeals, at Fort Worth, which reversed the judgment of the trial court because of alleged improper argument by plaintiff's counsel. See 136 S. W. (2d) 972. One portion of the argument complained of is as follows:

"If Dr Saunders would give any testimony in the slightest degree in variance with the testimony of what Dr. Clay Johnson gave you, don't you know that in his diligence that smart young man from Dallas would have brought him in here and had him to testify?"

The trial court approved the bill of exception to this argument with the following qualification:

"Counsel for the defendants had referred in his argument to the fact that Dr. Saunders was the family physician of Mrs. Smerke; had treated her for the injuries which she alleged to have received in the accident in question and had not been called to testify as a witness by the plaintiff."

Another bit of argument assigned as error is as follows:

"He says this is a little old lawsuit, a little old lawsuit, a justice court lawsuit perhaps, and gentlemen, there is one thing that I am sure that you must have observed about this young man from Dallas, that if you just wanted to get a smile out of him, see him infinitely pleased at any stage of this lawsuit, all you had to do was to mention something about that good woman back there suffering pain, and he broke out in smiles all over. I don't think it particularly pleased him that she was in pain, but I can't understand why at the mention of pain that this good mother has had to suffer and had to undergo throughout the months that have elapsed since this collision occurred, I don't know why that should bring a smile to the face of this young man who is in here representing this client and his corporation defendant's client as well."

It will be noted that in each of the above quoted excerpts from the argument of counsel for the plaintiff he referred to counsel for defendants as "that smart young man from Dallas" or as "this young man from Dallas" and the record reflects use of similar language in other connections. Such personal

references to counsel in a case manifestly have nothing to do with the merits of the case. They are condemned by our rules and should never be indulged in. Further, they present an appeal to the prejudice of a Fort Worth jury in a repeated reminder that defense counsel was from Dallas. We think it may be assumed that the geographical distribution of the lawyers had nothing whatever to do with a just solution of the issues presented.

The extent of Mrs. Smerke's injuries was sharply at issue. She testified that after the collision she was taken to the hospital long enough to be examined by a doctor and was then taken home; that the skin was broken and a large knot appeared on her forehead which caused her eyes to swell and her face to turn black; that her shoulders and back were injured and her arms skinned and swollen; that she had a bad bruise on her leg and parts of her hands were black and blue for two or three weeks; that she remained in bed for more than three weeks; that up to time of the trial she had continued to suffer great pain in the back of her head, in her back and in one of her wrists; that she had suffered from severe headaches and nervousness and had to take sedatives in order to sleep; that her appetite and digestion had been greatly impaired; and that she could no longer take her husband to and from his work and their children to and from school as she had done or to do very much of her housework. Mr. Smerke testified that he reached the scene soon after the collision and found Mrs. Smerke unconscious; and corroborated her as to her nervousness, headaches, inability to do her housework, drive the car and the like, but did not testify to seeing any knots, skin breaks, bruises or discolorations on the body. A Mrs. Owens who lived across the street from the scene of the accident, testifying for the plaintiff, said she saw the collision, ran across to Mrs. Smerke and then got a towel and water and assisted in rubbing her head until the ambulance arrived but she did not testify to seeing any bruises on Mrs. Smerks's hands or face or any blood on her forehead. Mrs. Barton and Mrs. Hart, neighbors and friends of Mrs. Smerke, testified to seeing bruises and injuries on her body substantially as she testified and corroborated her as to her nervousness and her inability to do her housework or drive a car after the collision. Dr. Clay Johnson, the physician who saw Mrs. Smerke the night of the collision, testified as a witness for the plaintiff, that he examined her but found no bruises, fractures or lacerations of the skin; that she seemed to be pretty nervous

and to have a certain amount of shock but that he found no external evidences of injury; that in response to his inquiries she complained of a general feeling of illness, distress and nervousness. In answer to a hypothetical question from plaintiff's counsel embracing generally the symptoms of injury testified to by Mrs. Smerke, Dr. Johnson said he thought it "would be probable, possible or reason (sic) for the symptoms to have been produced by the automobile accident." Replying to a similar hypothetical question propounded by plaintiff's counsel, Dr. J. A. Hampton, a witness for defendants, said "Under the hypothetical question that the patient had all these things, I would say that the accident could cause these symptoms."

These are all the witnesses who testified either directly or hypothetically touching Mrs. Smerke's injuries and we have given a fair resume of their testimony. In the light of the record thus made it appears that Dr. Roy Saunders, the Smerke family physician, concerning whom the remarks under consideration were made, was called to see Mrs. Smerke the day after the collision when he gave her aspirin and prescribed amatol for her nerves and gave her something, probably liniment, to use with hot applications for her bruises and recommended rest and quiet; that he came to see her at least five more times within a period of two or three weeks after the accident and that he had not seen or treated her since. Mrs. Smerke testified that if she had sought any further treatment she would have called Dr. Saunders.

■ In determining whether the argument above quoted was reversibly erroneous we are guided by the following declaration from Justice Sharp:

"It is not the policy of the law to impose the burden of showing harmless error upon the person whose rights have been transgressed. That burden rests upon the person in whose favor the transgression was made. The rule has been announced, and is adhered to by this Court, that, when improper argument has been made, the adverse complaining party is entitled to a reversal of the judgment, as a matter of law, if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted." Chapin v. Putnam Supply Co. et al 124 Texas 247, 251, 76 S. W. (2d) 469, quoting from Texas Indemnity Co. v. McCurry (Com. App.), 41 S. W. (2d) 215."

■ Applying these principles to the testimony above related and considering that the jury awarded damages in the sum of $3,500.00, while we might not reverse this case because of any of the several arguments complained of, we cannot say there is no reasonable doubt of harmful effect to the defendants when plaintiff's counsel intimated by what he said to the jury that Dr. Saunders, if he had been called, would not have given any testimony in the slightest degree at variance with that given by Dr. Clay Johnson, or when he argued at some length that opposing counsel representing a *corporation* defendant would "smile" or be "infinitely pleased at any stage of this lawsuit" at every mention of the pain suffered by "this good mother" (plaintiff's wife) throughout the months since the collision, or when he continuously referred to defense counsel as "that smart young man from Dallas" with its inevitable appeal to the geographical prejudice of a Fort Worth jury. We cannot say that it affirmatively appears that no prejudice resulted therefrom to the defendants. We believe that all these matters, taken together, present error.

It appears from the briefs that no objection was directed to the argument when it was made, but the matter was raised for the first time in defendants' first amended motion for a new trial. It has been frequently held that such objection need not be made at the time thereby affording an opportunity either for offending counsel to withdraw the remarks or the trial court to instruct the jury not to consider them when they are of such nature that withdrawal or instruction would not render their harmful effect free from doubt. The reason for this rule is that counsel making the argument is the offender so the law will not require opposing counsel to take a chance on prejudicing his cause with the jury by making the objection. Robbins v. Wynne (Com. App.), 44 S. W. (2d) 946.

Plaintiff in error contends the argument as above set out relating to Dr. Saunders was not erroneous because it was invited by counsel for defendants in their argument. According to the trial court's certificate in qualifying the bill of exception defense counsel referred to the fact that Dr. Saunders was Mrs. Smerke's family physician, had treated her for her injuries after the accident but had not been called as a witness for the plaintiff. We think it was the right of defendants' counsel to call attention of the jury to Dr. Saunders' failure to testify. Conversely, it was clearly the right of plaintiff's counsel to direct the jury's attention to the fact that defendants also had

the right to call him but had failed to exercise it. However, when plaintiff's counsel intimated what the testimony would have been, he committed error that he had not been invited to commit.

Our disposition of this case renders it unnecessary for us to consider the other propositions presented by this appeal as they are not likely to arise in another trial. However, we do suggest that the special issue submitting the matter of damages be reformed so as not to be open to the objection that it assumes that Mrs. Smerke sustained injuries.

Judgment of the Court of Civil Appeals reversing the judgment of the district court and remanding the cause is affirmed.

Opinion adopted by the Supreme Court, December 31, 1941.

Rehearing overruled February 4, 1942.