PHOENIX REFINING CO. v.
MORGAN et al.

No. 11592.

Court of Civil Appeals of Texas. Galveston.

Jan. 27, 1944.

Rehearing Denied March 1, 1944.

176

Kemper, Hicks & Cramer, of Houston (John G. Cramer, of Houston, of counsel), for appellant.

Earl Cox, of Houston, for appellees.

GRAVES, Justice.

Appellant's statement, admittedly correct, is adopted:

"This is a suit for damages brought by appellees, Mrs. Lucille Morgan, a widow, suing individually and as the administratrix of the estate of her deceased husband, Neal Morgan, and also as the mother and next friend of her minor son, Gene Ray Morgan, for the death of said Neal Morgan growing out of an automobile collision between a truck owned by Neal Morgan, deceased, and driven by his son, Gene Ray Morgan, and a truck owned by appellant, Phoenix Refining Company; said accident occurring on March 20, 1942, on Highway No. 90, in Colorado County, Texas, at about 7 o'clock A.M. A cross action was also filed herein by appellant for the damages to its truck and load of gasoline in said collision.

"The case was tried to a jury, and said jury returned a verdict in favor of appellees, awarding Mrs. Morgan $45,000.00 damages for the death of her husband, and the minor plaintiff, $2,500.00 for the death of his father. On March 19, 1943, the trial court entered a judgment in favor of appellees upon such jury verdict for $47,-880.00 (including $380.00 funeral expenses).

"Appellant timely filed its original and amended Motions for a New Trial, and the same was by the trial court overruled on May 29, 1943, but the trial court, as a condition to overruling the same required Mrs. Lucille Morgan to file a remittitur of $15,-000.00 of the $45,000.00 damages awarded her, reducing her recovery to $30,000.00, and such remittitur was timely filed by her, although she reserved a bill of exception to such action of the trial court."

This admirable group of its points on the appeal is likewise fully quoted as such:

"First Group:

"Appellant's First through its Fourth Points present respectively the error of the trial court in not granting appellant a new trial herein because of the prejudicial argument of counsel in his closing argument to the jury which not only was calculated to mislead and prejudice the jury to the injury of appellant, but was demonstrated to have actually had such effect upon the jury."

"Fifth Point:

"The error of the trial court in overruling appellant's Motion for a New Trial based upon the refusal of the trial court to submit to the jury appellant's requested Special Issues Nos. 1, 2, 3 and 4 presenting its defense of 'discovered peril', although such defense was raised by both the pleadings and the evidence in this case, and such issues were each separately and timely requested by the defendant and cross-plaintiff, but 'refused' by the trial court."

"Third Group:

"Appellant's Sixth and Seventh Points present respectively the error of the trial court in submitting Special Issue No. 22 to the jury (when the undisputed evidence revealed that Gene Ray Morgan prior to the accident failed to drive his truck entire-

ly upon its own right-hand side of the highway along which it was proceeding), and submitting Special Issues Nos. 23 and 24 conditioned upon an affirmative answer to Special Issue No. 22, and the jury having answered Special Issue No. 22 in the negative, contrary to the undisputed evidence, and having made no answer to Special Issues Nos. 23 and 24, this appellant, by such submission, and such action of the jury, was deprived of a jury finding in answer to. its defense set forth in Special Issues Nos. 23 and 24; and likewise, the trial court having erred in submitting Special Issue No. 25 to the jury (when the undisputed evidence revealed that Gene Ray Morgan prior to the accident failed to drive his truck upon its own right-hand side of the highway in the direction that it was proceeding at a time when the road on its left-hand side of such highway was not clear and unobstructed for a distance of 50 yards ahead of such truck), and in submitting Special Issue No. 26 conditioned upon an affirmative answer to Special Issue No. 25, and the jury having answered Special Issue No. 25 in the negative, contrary to the undisputed evidence, and made no answer to Special Issue No. 26, this appellant, by such submission, and such action of the jury, was deprived of a jury finding in answer to its defense set forth in Special Issue No. 26; since there was no evidence to support the jury's answers to either Special Issues Nos. 22 or 25, and the fact inquired about in each of such issues should have been answered by the trial court as existing, under the undisputed evidence, and the real defensive issues should not have been conditional upon issues which had been proven during the trial by the undisputed evidence."

The complained-of argument, under this "First Group", as quoted and italicized by appellant in its brief, was in the main this:

"That would then get you to issue No. 35 which is the issue of damages. You will read that issue. It asks you what sum of money in your opinion would reasonably compensate Mrs. Morgan for the loss of her husband taking into consideration the contributions, support and maintenance— anything that might be measured in money—pecuniary benefits that she might receive. *I have sued for $45,000,* and if you will take a pencil and paper—that wasn't just an amount that I plucked out of thin air—*I say it is based on a mathematical calculation.*

"She tells you her husband contributed to her support, her maintenance, money for clothes, and she told you it amounted to $150.00 a month. That is $1,800.00 a year. $1,800.00 a year for twenty-five years, *the life expectancy of the husband of this lady,* is exactly $45,000.00.

"Now, in that connection, let me tell you this. *You are not awarding judgment against anybody in this case. You are finding the facts.* The Court asks you in Special Issue No. 35 what sum of money if paid now in cash do you find from a preponderance of the evidence would fairly and reasonably compensate this woman. You are asked in effect an abstract question. The Court asks you what amount of money in your opinion would be fair compensation to this lady. *It is up to the Court to enter such judgment as he sees fit on the verdict you return.*

"It is exactly—there is no difference— if the Court would put a sack full of silver dollars in this jury's hands and tell you gentlemen, 'You go into the jury room and count these dollars and come back and tell me how many there are in the sack'; you would go in there and count them and you would come back and say, 'There are $500 in this sack.' He would say, 'All right, gentlemen, you have found the amount of money in that sack.'

"He has asked you what amount of money in your opinion—*you are not rendering judgment, because it is up to him to render such as he sees fit*—you are asked what amount of money will fairly and adequately compensate this lady. How are you going to find it? I say as to the boy there is no way it could be calculated. Gene may not be entitled to anything. It may be worth five thousand dollars. It may be worth five hundred dollars. That is something a man would have to guess at, but where a woman loses her husband and you have the age of the husband, the age of the woman, you have the earnings of the husband, *you have the amount that the husband contributed to the wife, and you have the life expectancy of the husband, then it is a matter of arithmetic, and nothing else.*

"I am asking you in that connection in answering Issue No. 35, *I am asking you to answer that issue under the evidence, and under the calculations based upon the undisputed evidence, to answer that issue $45,000.00 no more, no less, and then it will be up to the Judge, after you have found the facts, it will be up to the Judge to de-*

*cide what judgment shall be entered on your verdict.* \* \* \*

"I want to tell you gentlemen if at any time in the future you are sitting at home by your firesides, perhaps with your families, if you ever think of this law suit that you have sat·upon here, *if you ever think of Mrs. Morgan, this widow, left alone in the world—if you ever think of this boy, Gene, who will be heaven knows where in this war*—if you ever think of these people in this case—if you can feel in your minds, 'I feel satisfied about that lawsuit, I am satisfied with the verdict I returned in that case, *I know I did the right thing, I know I did the just thing,* I know I answered those issues in that case from a preponderance of the evidence without fear or favor, or without prejudice or malice', if you can feel that way, gentlemen, as I am sure you will be able to feel, I know you will feel satisfied—that you will be satisfied with what you have done. Mrs. Morgan will be satisfied. *Mrs. Morgan at this stage of her life,* gentlemen, with Bobby Burns, can well say:

" 'Oh life, thou art a galling load,
Along a rough and weary road,
For wretches such as I.'
"I thank you."

No objection at any time during or after the delivery of this argument was made to any part of it by the appellant, which took its chances on the jury's .verdict upon the 36 special issues-of-fact submitted by the court notwithstanding it, but challenged it for the first time in its motion for a new trial, contending there, in the many details emphasized by its quoted underscoring, that the argument had been incurably improper, hence, as a matter of law, could not have been cured by any instruction the court might upon request have given, citing among its leading authorities in support thereof these: West Texas Utilities Co. v. Renner, Tex.Com.App., 53 S.W.2d 451, 456; Gulf, C. & S. F. Ry. Co. v. Ballew, Tex. Com.App., 66 S.W.2d 659; Missouri, K. & T. Ry. Co. v. O'Hare, Tex.Civ.App., 39 S.W.2d 939, error dismissed; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213; Field v. Munster, 11 Tex.Civ.App. 341, 32 S.W. 417, error refused 89 Tex. 102, 33 S.W. 852; Hines v. Kelley, Tex.Com.App., 252 S.W. 1033; Ft. Worth & D. C. R. Co. v. Morrison, 93 Tex. 527, 56 S.W. 745; Protective Mutual Life Ass'n v. Duke, Tex. Civ.App., 91 S.W.2d 753; Seismic Explorations v. Dobray, Tex.Civ.App., 169 S.W.2d 739, error refused; Traders & General Ins. Co. v. Crouch, Tex.Civ.App., 113 S.W.2d 650, error dismissed; Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Rule 269, Texas Rules of Civil Procedure; Brown Cracker Co. v. Castle, Tex.Civ.App., 26 S.W.2d 435; and Castle v. Brown Cracker & Candy Co., 119 Tex. 447, 31 S.W.2d 630; Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302.

This court, after careful review of the record, inclusive of the setting into and under which this deliverance was made by the appellees' counsel, is constrained to agree with the trial court that it was neither intrinsically reversibly erroneous, nor of such a nature that it could not have been withdrawn, or its effect, if harmful at all, removed by some appropriate instruction from the court, had an objection thereto been made at the time. Under now well-settled authority, whatever potential error, if any there was, in the court's permitting the challenged argument to go to the jury without any instruction from it, was waived by the appellant by its neglect of duty in not objecting to the argument when it was made, and requesting the court to remove the menace of it from the jury's consideration. Texas & N. O. Ry. Co. v. Sturgeon, Tex.Sup., 177 S.W.2d 264; 41 Tex.Jur., 797; 64 C.J., 250; 41 Tex.Jur., 802.

The authorities emphasizing the duty of litigants, as well as their privilege, of objecting to what are deemed to be by them prejudicial arguments at the time made are cited first, because the law upon that subject has just been reiterated in the respect directly applicable here in Texas & N. O. Ry. Co. v. Sturgeon, supra. In the opinion of this court, that holding alone, upon the undisputed facts here, at the threshold disposes adversely to it of all of appellant's complaints against the argument so made in this instance.

However, while that is so deemed unnecessary, it may not be amiss to enlarge very briefly upon the secondary holding, that this argument—considering the field into which it was injected—was not intrinsically of prejudicial effect upon the appellant's rights, to-wit:

(1) As indicated, it was a part of his closing address, whereas appellees' counsel had, in his opening one, fully explained what the special issues given the jury were—that is, that they were only detailed written questions-of-fact which alone the

jury could answer as directed by the court from the preponderance of the evidence, and that they could not return a general verdict in favor of either side; after discussing that large number of different issues and indicating to the jury how he thought they must be answered under the evidence, appellees' counsel discussed the damage issues—Nos. 35 and 36. Then, in advance, after making practically the same statements with reference to damages that appellant herein criticises as having later been made in his closing argument, he concluded by, at that time, telling the jury this:

"You are not rendering judgment against anybody, by answering this question, what amount of money will reasonably compensate this widow—the court wants to know that."

Thereupon the answering argument of appellant's counsel ensued, following which appellees' counsel made his concluding one that is here under review; he reiterated his request for an award of $45,000 for Mrs. Morgan, urging that the jury could arrive at that sum as reasonable compensation for her from the preponderance of the evidence by taking into consideration the earnings of her husband, the amount he contributed to her during his life, considering what they found to be his life-expectancy from the evidence, and that, finally, in so doing they would in effect be merely making a mathematical calculation from the evidence before them; that in so doing they would not be awarding a judgment against anybody, but only finding the facts in answer to specific issues asked them by the court, and that "it is up to the court to enter such judgment as he sees fit on the verdict you return."

Appellant is mistaken in its insistence that there was no evidence before the jury as to what was the life-expectancy of the appellee's deceased husband; on the contrary, there is ample if not conclusive evidence from which the jury as a matter of routine could have fixed the husband's expectancy at 25.27 years, and that of the wife as 28.18 years; the former having been shown to have been 44 years of age and the latter 40 years of age, the American Experience Tables of Mortality being before them, which properly showed the basis for, if they did not require, such findings. 17 Tex.Jur., page 741; 22 C.J., 927.

Group 1 of appellant's points is accordingly overruled.

Its fifth point, constituting its second group, challenging the court's action in having refused its special issues 1 to 4, inclusive, seeking to present to the jury its defensive claim that the appellees' driver had discovered its truck-driver's peril in time to have prevented the collision, but negligently failed to live up to the new duty thereby imposed upon him, is likewise thought not to be well taken, in the state of this record.

It is true that appellant was not only a defendant in the appellees' suit for damages to themselves resulting from the collision, but it was also a cross-plaintiff in its action over against the appellees for alleged damages to its truck resulting from the collision; hence it doubly pleaded such doctrine of discovered peril in its own behalf, first against appellees in their main suit against it for damages, and second, as an offense against it by such negligent action of the appellees' driver, after discovering the position of peril its driver had been so placed in.

It is concluded that the evidence did not raise this declared-upon issue of discovered peril from appellant's standpoint—notwithstanding its stated dual positions; wherefore, however well-pleaded that asserted right, there was no requirement upon the court to submit the inquiries to the jury. The driver of appellant's truck was killed, as was the father of the appellee, Gene Ray Morgan, who had been riding with his son, so that there were only two surviving witnesses to the collision that is, the appellee, Gene Ray Morgan, himself, and appellant's witness, E. T. Roberts; consequently the controlling facts from their testimony is all that is in the record as to the manner in which the collision occurred.

Without detailing this testimony at length, it is deemed enough to find that the gist of it all—taking into consideration meanwhile these witnesses' differences as to which truck was on its wrong side of the center line of the highway at and immediately before the time of the collision—clearly seems to this court to be unmistakable, to the effect that when the emergency appellant so declared upon as constituting discovered peril in its behalf actually occurred, that is, when it arose or was created by the one or the other of the trucks being on its own wrong side of the highway at that very moment, the trucks themselves were 150 feet apart.

That being the boiled-down situation, as reflected from the statement-of-facts upon this phase of the controversy, this comment upon the resulting effect from the appellees' brief is thought to be substantially correct, both in fact and law, to-wit:

"A vehicle proceeding at a rate of speed of 25 miles per hour covers 150 ft. in 4.09 seconds. A vehicle proceeding at a rate of speed of 35 miles per hour covers 150 ft. in 2.92 seconds. The combined speed of the two trucks as they approached each other was 60 miles per hour. A vehicle proceeding at 60 miles per hour covers 150 ft. in 1-7/10 seconds. Therefore, under the undisputed evidence, the trucks involved in the collision would close the 150-foot space existing between them in 1-7/10 seconds, continuing at the speed at which they were going, and young Morgan had only 1-7/10 seconds in which to avoid the collision after the perilous situation was created. Furthermore, there is no testimony in the record whatsoever as to the distance at which the appellees' truck could have been stopped, proceeding at a speed of 35 miles per hour, nor is there any testimony in the record showing or even intimating how or in what manner young Morgan could have avoided the collision.

■ "Reasonable minds could not differ on the proposition that, after the perilous situation developed, it was impossible for young Morgan to have avoided the collision, by the use of the means at hand and in safety to himself, his father, and the truck he was operating. The evidence was insufficient to raise the issue of discovered peril on the part of either driver involved in the collision. Cantu v. Southern Tex. Transp. Co., Inc., 110 S.W. 2d 995, by this court, no writ sought; Schumacher v. M. P. Transp. Co., Tex.Civ. App. El Paso, 116 S.W.2d 1136, error refused; Surkey v. Smith, Tex.Civ.App. San Antonio, 136 S.W.2d 893, error refused; Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112; Jewell v. El Paso El. Co., Tex.Civ.App. El Paso, 47 S.W.2d 328, error dismissed; Gersdorf-Sloan Ambulance Service Inc. v. Kenty, Tex.Civ.App. San Antonio, 75 S.W.2d 903, no writ sought; Huntley v. Psimenos, Tex.Civ.App. El Paso, 67 S.W.2d 350, error dismissed."

■ After reviewing the statement-of-facts upon that feature, this court is unable to agree with appellant that the findings of the jury in answer to special issues 22 and 25, to the effect that the appellee, Gene Ray Morgan, did not fail to drive his truck entirely upon its own right-hand side of the highway prior to the collision and at the time when the road on its left-hand side of such highway was not clear and unobstructed for 50 yards ahead of such truck, is not sufficiently supported by the evidence;

On the other hand, without recapitulating or undertaking to make a complete resume of the testimony, it is concluded that appellant's main contention in this behalf, that appellee Gene Ray Morgan's testimony itself conclusively established the lack of support for either of such jury-findings, cannot be upheld. The appellees' truck that young Morgan was so driving was in fact a tractor, with a trailer appended thereto; the gist of his testimony upon this phase of the cause is, unequivocally, that he was operating the tractor upon its own right-hand side of the road and continued so to do right up until the time of the actual impact between the two vehicles, at which moment he jerked his tractor to the left, in an effort at that crucial moment to avoid the collision; that if he had then turned to his right, his truck would have been hit broadside, there being a ditch on that side, whereas as a result of the left jerk he did so make, the right front both of his truck and his trailer came into contact with the left front of the appellant's truck; in a word, he said substantially this:

"That his truck was a couple of feet across the black line at the time of the impact. That his units (meaning the tractor and the trailer) were both on his right hand side of the road at the time of the accident, and that 'I jerked my tractor to the left and the tractor was across the line approximately 2 feet, perhaps more.' In answer to the question: 'then it is your testimony that this accident did not happen on your lefthand side of the road', the witness testified 'when the units came together, I jerked my tractor to the left in an attempt to avoid him.' 'My truck was right in here I would say, and just before the point of impact the other truck was coming in this direction. I jerked my tractor to the left and he hit the right front of my tractor, and the right nose of the trailer.' That while it is pretty difficult to jerk a tractor and a trailer with a 25,-000-pound load from one side of the high-

way to the other, going at a speed of 35 miles per hour—that is, the whole unit—the tractor itself is easy to move. It can be moved easily."

It would therefore seem, plainly, that what he thus specifically in much detail testified he did do did not constitute a failure upon his part "to drive his truck entirely upon its righthand side of the highway", prior to and at the time of the collision, as the two inquiries, 22 and 25, sought to elicit.

Hence it was not reversible error for the trial court to have submitted issues 22 and 25, and to have predicated the answers to the ancillary issues, Nos. 23, 24 and 26, on affirmative findings to 22 and 25, as appellant's third group urges. It is therefore overruled.

■ The appellees, by cross-assignment, pursuant to No. 328, Texas Rules of Civil Procedure, assail the trial court's action in requiring from them a remittitur, reducing the jury's verdict in favor of appellee, Mrs. Morgan, from $45,000 to $30,000, as a condition to overruling appellant's motion for a new trial herein, as having constituted prejudicial error against themselves; their contention being that there was ample testimony in the record to support the findings in their behalf for the $45,000, that it was the jury's exclusive province to determine the amount that would reasonably compensate Mrs. Morgan, and that. "so long as there is testimony in the record supporting their finding, it is immaterial, in the absence of misconduct on their part, how they arrive at such figure.

"There being evidence in the record amply supporting the finding of the jury of damages in the sum of $45,000 the trial court was without authority to arbitrarily disregard this finding, and substitute his judgment for that of the jury and reduce such finding to $30,000."

In support, they cite many cases in which large judgments upon the distinctive facts therein appearing were sustained by the courts, indicating in their view that all such decisions are persuasive only, but that they constituted precedents for their own position in this instance.

This cross-assignment is overruled, upon the finding by this court that no abuse of the trial court's discretion in requiring the remittitur is made to appear, since the testimony was such that the trial court's action in requiring the reduction may not be termed an arbitrary substitution of its own judgment for that of the jury.

Indeed, while by the terms of the damage-issue as to Mrs. Morgan, special issue No. 35, the jury were in effect instructed to find only the cash value at that time of the loss sustained by her, they seem to have found the full $45,000 sued for by her, without any discount. In that event, the court's power to so reduce it would seem clear, Vernon's Texas Civil Statutes, Article 2235, and annotations.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.