## TEXAS EMPLOYERS' INS. ASS'N v. COOPER.

### No. 4446.

Court of Civil Appeals of Texas. El Paso.

Jan. 10, 1946.

Rehearing Denied Feb. 7, 1946.

820

Sam Cleveland, of Stephenville, and Whitaker, Turpin, Kerr, Smith & Brooks, of Midland, for appellant.

John J. Watts, of Crane, for appellee.

McGILL, Justice.

Appellant's statement of the nature and result of this case is admirable for its clarity and brevity. We adopt it literally: "Appellee, L. V. Cooper, as plaintiff below, sued appellant, Texas Employers' Insurance Association, as defendant, to set aside an award of the Industrial Accident Board, which award confined appellee's claim to a partial and temporary loss of the use of a hand. Based upon jury answer to special issues, judgment was entered against appellant in the trial court for the maximum amount allowed under the compensation law for total and permanent general disability, and this appeal results."

Appellant presents eight points: First: That the court erred in rendering judgment for total and permanent disability because there was no evidence of sufficient probative force to show that the accidental personal injury sustained by plaintiff affected part or parts of his body other than his right hand so as to cause the general incapacities found by the jury. On this point the material findings from a preponderance of the evidence were:

On or about September 17, 1944 (1) plaintiff sustained an accidental personal injury or injuries (2) while working as an employee of R. B. Myles (3) in the course of his employment (4) as a result of which he sustained total incapacity (5) which began on September 17, 1944 (6) and which is permanent; (8) the jury failed to find from a preponderance of the evidence that plaintiff has or will sustain partial incapacity as a result of such injury or injuries; (12) plaintiff sustained an injury or injuries to his body other than to his right hand below the elbow (13) which contributed to his incapacity to labor (14) and which has continued or will continue throughout such period of time that he will be incapacitated to labor; (21) the incapacity of plaintiff to work was not due solely to the injury to his right hand below the elbow; (23) the accidental per-

sonal injury to plaintiff was the producing cause of the lung condition now suffered by plaintiff; (26) plaintiff's injuries or the effect thereof were not confined to the right hand below the elbow.

The accident occurred while plaintiff was using gasoline to kindle a fire on a forge for the purpose of heating a drill bit so that it could be dressed. The gasoline exploded as he poured it on the forge. He testified concerning the accident: "the flames jumped up I reckon over my head and caught my hand, and I jerked back from the fire and it sloshed all over my clothes and arm and it was afire. I tried to put the fire out and I couldn't put it out, and Mr. Hudgens, the man that was with me, couldn't put it out and he yelled and I went to hollering and crawled into the slush pit, into this mud and stuff, and put the fire out, to keep from being burned to death * * *" and further, on rebuttal: "My clothes was on fire and I was afire, it was going higher than my head from the gas being all over my clothes and arm, and I was inhaling these burning fumes, choking, couldn't breathe, and when I hit that cold water and mud that put the fire out, and when I hit my head come down here (indicating) and I couldn't breathe half a minute or raise it."

Concerning his injuries he testified that he stayed in a hospital ten or fifteen days after the accident; that he had suffered pain in the lungs and chest ever since he had been burned and couldn't rest at night, sleep very long or lay down and relax; that his weight was 200 pounds at the time of the accident and 164 pounds at time of trial; that he had never had any pain in the chest or been unable to sleep or lost weight before the accident; that before the accident he never had any trouble doing the hardest manual labor in the oil fields, but after the accident the only work he had done except just feeding the chickens or something like that was to try to work at a filling station, but he couldn't hold up the work and had to quit; that his condition was "worse now, and worsening more all the time."

Dr. Wm. R. Snow, the only medical witness offered by plaintiff, testified that he made a complete physical examination of him on November 26th, following the accident, at which time he took X-ray pictures of his chest and heart. As to what the X-ray revealed, he testified: "Well, there is a striping of the lung tissue or a fibrosis of the lung tissue, and the enlargement of the para-bronchial glands in the chest around the hilus—that is the root of the chest—the lung shows an increased amount of fibrosis and enlargement of the glands, which is similar to the fibrosis in the lung tissue, the white striping there (indicating), there seems to be a fibrosis instead of a clear outline of an unimpaired lung."

He also testified that he again examined plaintiff on June 25th, the morning of the trial, and that "He still has rales in both lungs. He has a moist rale which is crepitant, moist, in both lungs, front and back, which indicates an inflammatory space in the bronchial tubes, what we ordinarily speak of as bronchitis."

That he considered plaintiff's inability to perform labor total and permanent. In answer to a hypothetical question, he gave as his opinion that the probable cause of plaintiff's condition was the burns: "I think it was due to the burns * * * the inhalation of the fumes from the gasoline and the flames into his lungs. Of course when he breathed in the flames and fumes into his chest that naturally went right down his windpipe into the bronchial tubes through his lung space."

On cross-examination he testified that he found plaintiff's heart was weak and that he attributed this heart condition to his lung condition. He admitted that fibrosis or scar tissue in the lungs is caused by other things than burns, such as irritant dust, or by smoking, also that bronchitis responds to medical treatment and is not necessarily a disabling disease.

There were findings that (15) plaintiff sustained an injury or injuries to his right hand below the elbow (16) by reason of which he sustained a total loss of the use of his right hand below the elbow (17) which loss was permanent (18) and would continue for 101 weeks and (19) was one hundred per cent.

The evidence above outlined, viewed as we must view it in the light most favorable to appellee, was of sufficient probative force to raise the issue of whether the accidental personal injury sustained by plaintiff affected a part or parts of his body other than his right hand, so as to cause or contribute to his total permanent incapacity. Finding 23 is specific that the accidental injury was the producing cause of the lung condition which plaintiff suffered at the time of the trial—a condition which according to Dr. Snow's testimony consisted of a fibrosis or scarred lung tissue which weakened his heart, and which together with his weak heart and the injury to his right hand caused total permanent incapacity. It may be conceded as so ably argued by counsel, that the conception of live flames entering the mouth or nostrils, passing through the trachea and penetrating the lungs without visible injury to the mouth, nostrils, tonsils or face is indeed fantastic, but it is conceivable and not at all improbable that one whose clothing was afire, as plaintiff testified his was, could inhale fumes from the flames which would pass through his mouth or nostrils and trachea, remain in and damage his lungs without causing any other damage. Under Dr. Snow's testimony, fumes from the fire, as well as the flames, caused the damage to the lungs; that he admitted that the damage could have resulted from other causes such as irritants, dust, or smoking, is of little consequence. There was no evidence that plaintiff was addicted to smoking, or that he had been exposed to other irritants or dust, other than that he was an oil field worker. The absence of such evidence distinguishes this case from the case of Federal Underwriters Exchange v. Edwards, Tex.Civ.App., 146 S.W.2d 461, so strongly relied upon by appellant. In that case there was testimony that a "floating kidney" was congenital. In the absence of any testimony other than the doctor's opinion from what the complaining party had told him that it was the result of a ladder accident, and in view of his further testimony that from his physical examination he did not know the cause, it was properly held that the jury would not be permitted to speculate as to whether the floating kidney was congenital or resulted from the ladder accident. Another distinction is that in that case the injured party continued to work as a painter after the accident. There was no showing of his inability to perform the same kind of work as before the accident, or of his loss of weight and inability to sleep or relax as in this case. We overrule this point.

The substance of the remaining points will become readily apparent from our disposition of them. The Court did not err in rendering judgment for a lump sum. The jury found that (20) payment of compensation to plaintiff in weekly installments instead of in a lump sum would result in a manifest hardship and injustice to him. Plaintiff testified that his family consisted of a wife and two children; that he owed around $650 and would like to invest the money he received in something that would make a living for him and his family. This evidence, though meager, was sufficient as a basis on which the jury could form an opinion as to whether or not a lump sum should be awarded. This is a matter of opinion and is largely discretionary. Texas Indemnity Insurance Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915, writ refused w.m. No abuse of discretion is shown.

The court did not err in considering, if he did, the foregoing findings to effect that plaintiff had sustained a total loss of the use of his right hand. It is unnecessary to detail all of the testimony which supports these findings. Plaintiff's testimony that his hand was stiff, fingers numb all the time and stiff; that he had no grip and couldn't bend his hand down any more, and Dr. Kruger's testimony to effect that when he examined him on November 23, following the accident his fingers were completely straight and he was unable to bend the joints of any of the fingers with the exception of the thumb, and had only slight motion in the thumb, was sufficient to support these findings.

Special Issues Nos. 6 and 7 were as follows:

"No. 6. Is such total incapacity, if any you have found, permanent or temporary?

"If you find from a preponderance of the evidence that said total incapacity, if any, is not 'temporary' but is 'permanent' you will answer said issue 'permanent', otherwise you will answer said issue 'temporary'.

"If you have answered No. 6 'temporary', and only in such event, then answer:

"No. 7. What do you find from a preponderance of the evidence to be the duration of said total incapacity to labor, if any.

"Answer in number of weeks, if any."

No. 6 unconditionally submitted appellant's affirmative defense of appellee's temporary incapacity, as specifically provided by Rule 277, T. R. C. P. Unless there was a temporary incapacity, no issue of the duration of temporary incapacity could arise, therefore the conditional submission of No. 7 was proper. Traders' & General Ins. Co. v. Little, Tex.Civ.App., 188 S.W. 2d 786, loc. cit. 788, par. 2, writ refused w.m.

The case of Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359, relied on by appellant is distinguishable. In that case the issue of temporary incapacity was not unconditionally submitted, if submitted at all. The conditional submission of the duration of total incapacity did not unconditionally submit such issue; hence defendant was deprived of the unconditional submission of an affirmative defense, properly pleaded and raised by the evidence.

■ Special issue No. 1 inquired merely whether plaintiff sustained an accidental personal injury or injuries on or about September 17, 1944. A similar issue was submitted in Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463. In that case it was contended that an injury to plaintiff's leg spread to and affected other portions of his body, causing total incapacity. No issue on this question was submitted, and the court held that a finding thereon favorable to plaintiff could not be implied in view of exceptions to the submission of the special issue above referred to. The case has no application. It is not contended that the burns on plaintiff's right hand affected his lungs or other parts of his body, and there were findings (23) that the accidental injury was the producing cause of his lung condition, and that (12) on September 17, 1944, plaintiff sustained an injury or injuries to his body other than to his right hand below the elbow (13) which contributed to his incapacity.

■ In his opening argument plaintiff's counsel, who was the County Judge of Crane County, stated: "I appreciate the confidence of the citizenship of this county, and I have never knowingly brought into anybody's courthouse a lawsuit I am not absolutely sold on, heart, mind, body and soul."

Objection was interposed, because such argument "injected into the consideration of the case matters entirely outside of the record and brought into the case the known standing of the County Judge of Crane County." The objection was overruled. Counsel then stated: "Gentlemen, by that statement I simply mean that right or wrong, you know I believe in this lawsuit."

No objection was made to this statement. In his closing argument plaintiff's counsel stated:

That a man who has been gassed—whether he inhales fumes or gasoline—would not know whether tuberculosis or bronchitis or lung trouble is going to develop; that lung trouble from inhalation of an irritant such as flame or gasoline fumes is slow in developing; that if plaintiff had gone to the hospital with a serious burn they would keep him full of dope all the time he was there; that it would take weeks and months before that (a serious lung burn) would even show in an X-ray picture. That loss of weight is one of the important things that follows lung trouble; (3) that men get hurt and think they are all right and go out and work and die from injuries in a few days or few months thereafter; that painters that paint, if they inhale the fumes of the paint will get deathly sick; that doctors used to think that rest in bed was the only thing for people, and bleeding people; and that a man will go to the best clinics and that they will tell him he has different diseases. The bill of exception states that there was no evidence in the record of any of these facts, and that no objection was made to the argument at the time it was made.

The issues as to whether plaintiff sustained any lung injury as a result of the accident, and whether such injury caused or contributed to his total incapacity were sharply controverted. The statement to which objection was interposed standing alone might be taken as an appeal to the jury to be influenced in their determination of the issues submitted because of counsel's belief in the merits of the case and the confidence of the citizenship of Crane County, including the jury, in him. Counsel's opinion, inferable from the argument, was necessarily founded on an investigation made outside of court, and could have no legitimate bearing on the issues submitted. The court erred in overruling the objection. However, in view of counsel's statement immediately following, to which no objection was made, the only reasonable meaning that can be attributed to the former statement is that counsel believed in the lawsuit, whether right or wrong—in other words, that he was enthusiastic about his case. After this latter statement the former statement could hardly have been considered as an appeal to be influenced by counsel's belief even though that belief were wrong. The latter statement constituted a partial withdrawal or modification of the former.

The extraneous matters referred to during the closing argument were not so prejudicial or inflammatory that their harmful effect could not have been cured by withdrawal of counsel or instruction of the court. By its failure to object and request proper instructions appellant waived the error. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054. Such argument is improper. It is always dangerous, since it must be considered in its entirety. Smerke v. Office Equipment Supply Co. et al., 138 Tex. 236, loc.cit. 241, 1st par., 158 S.W.2d 302, loc.cit. 305, 1st col. par. 1; and a reversal is required as a matter of law if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted. Chapin v. Putnam Supply Co., 124 Tex. 247, loc.cit. 251, 1st par., 76 S.W. 2d 469, loc. cit. 470, col. 2, par. 1;

Quoted in Smerke v. Office Equipment Supply Co., 138 Tex. 236, loc. cit. 240, last par., 158 S.W.2d 302, loc. cit. 304, 2nd col., par. 2;

And in the comparatively recent case of Texas Employers' Insurance Ass'n v. Drayton, Tex.Civ.App., 173 S.W.2d 782, loc.cit. 788, 2nd col. par. 7 and 8.

With a great deal of hesitancy we have concluded that considering the argument as a whole, any doubt of its harmful effect would be more fanciful than reasonable in the light of the entire record.

The judgment is affirmed.