**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**T. G. SWAIM, Appellee.**

No. 6375.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 22, 1954.

Rehearing Denied March 22, 1954.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Bob Huff, Lubbock, for appellee.

NORTHCUTT, Justice.

This is a compensation case. T. G. Swaim, hereinafter called plaintiff, was employed by Davidson Drilling Company as a laborer and Texas Employers' Insurance Association was the insurance carrier for Davidson Drilling Company. Swain brought suit against Texas Employers' Insurance Association, hereinafter called defendant, for damages alleging that on May 4, 1952, he injured his back while handling drill collars on a drilling weel. Plaintiff waives all rights or claims to a lump sum recovery.

Defendant answered alleging that the incapacity, if any, of plaintiff was temporary and partial and had long since ceased and terminated and that plaintiff had been able to and had obtained and retained employment in the oil fields at all times subsequent to his alleged injury on May 4, 1952, and that his earnings and earning capacity had been at least as much or more per week subsequent to May 4, 1952, than it was before May 4, 1952, and there had been no decrease in plaintiff's earnings and earning capacity. Appellant further alleged plaintiff within a day or two after May 4, 1952, was in the same physical condition as he was prior to May 4, 1952.

The case was tried to a jury upon special issues. Upon the answers of the jury that the plaintiff was 50 per cent partially disabled and that his average weekly wage before he was injured was $88.40. Judgment

was granted for the plaintiff for $16.67 per week for three hundred weeks and also $8.33 per week for three hundred weeks for plaintiff's attorney. Defendant presented its motion for a new trial but the same was overruled by the trial court and hence this appeal.

The appellant presents its appeal upon fifteen assignments of error. The first two points are presented together since they deal with the testimony of the financial condition of plaintiff and the statements made by the plaintiff's attorney about the plaintiff working under the whip of necessity.

 This is an action for a general injury and not for any specific injury as covered by Article 8306, Section 12, of the Workmen's Compensation Law. This is not a case in which a lump sum recovery is sought and any issue as to a lump sum recovery was waived by the plaintiff. Plaintiff, before any evidence was ever offered by the defendants as to the plaintiff's working after he was injured, continued to bring before the jury his alleged necessitous condition because he owed for a car and was afraid he would lose it and concerning other items of need; seeking to show his hardships. After plaintiff had testified about being afraid he would lose his car and was asked other questions by his counsel about his car and the same was objected to by the defendant and such objection sustained by the court as to the car, plaintiff's attorney again called attention before the jury about the car by telling the plaintiff, "We're not going into anything about the car." The Court of Civil Appeals in the case of Hartford Accident & Indemnity Company v. Leigh, Tex.Civ.App., 57 S.W.2d 605, held, opinion by Judge Hickman, that no evidence should be admitted as to the poverty or necessitous condition of the injured party where his alleged incapacity is only partial. It is said in Texas Employers Ins. Ass'n v. Hitt, Tex.Civ.App., 125 S.W.2d 323, 329:

"(8) While, as already indicated, testimony as to a claimant's financial condition in a compensation case, where the issue of a lump-sum settlement is also raised, is admissible, it seems clear that the court should not permit testimony as to financial distress to influence the jury in passing upon the question of whether or not— vel non—an actual disability exists, and the extent of it; for this reason the court did not err in instructing the jury not to consider this plaintiff's financial need in determining whether or not he had suffered the disability claimed; whether or not that instruction was necessary, it was clearly not harmful."

In 45 Tex.Juris., Page 685, it is stated: "In cases where a lump sum award is not proper, evidence of the poverty and necessitous condition of the claimant is not relevant to any issue and so is not admissible."

Under the Workmen's Compensation Law, the damages recoverable is not for pain and suffering nor for the actual damages lost but is for the difference between his average weekly wage before the injury and his average weekly wage-earning capacity during the existence of such partial incapacity. Under Article 8306, Section 15, in case of death or total permanent incapacity a lump sum is provided for where *manifest hardship or injustice* would result. (Emphasis ours.) The court is without jurisdiction to render a lump sum judgment under Workmen's Compensation Law for partial disability. The testimony offered as to the necessitous condition of the plaintiff was introduced, over the objections of defendant before any effort was even made to show plaintiff had continued to work, to show the plaintiff's hardship at the time and could have no bearing upon the extent of plaintiff's incapacity to work but would only apply where lump sum settlement is involved. Appellant's Points 1 and 2 are sustained.

 Appellant's third assignment of error is to the effect that the trial court erred in not granting judgment for it because the evidence shows the appellee earned as much after his alleged injury as he earned prior thereto. The fact that plaintiff worked and

earned money after his injury is not conclusive on the issue of his average weekly wage-earning capacity but is evidentiary only and may be considered by the jury along with the other evidence in determining the extent of his wage-earning capacity. Appellant's third point is overruled in view of the ruling hereinafter made.

■ Appellant by its fourth assignment of error complains of the findings of the jury to the effect that the plaintiff was partially incapacitated and that such incapacity was permanent and that such incapacity was 50 per cent. Under the record here it is not shown that the appellee worked continuously from May 4, 1952, the date he claims to have been injured, to the date of the trial. It is undisputed that appellant continued to work from May 4, 1952, to May 20, 1952, with the exception of one day. He quit his job at that time to take his wife to the hospital. He worked some in June, 1952, and then in August, 1952, was working up in Kansas when he received a letter from his attorney to come back and go to see his doctor. He quit work at that time because of the request of his attorney and not from an inability to work. After returning from Kansas, appellee worked most of the time up until about five days before the trial. Appellee testified he made approximately $4,500 from May 4, 1951 to May 4, 1952. The undisputed record shows that during the months of October, November, and December, 1952, he made $1,391.68 but the record does not show the amounts made by appellee during the other months from the date of injury, May 4, 1952, to April 13, 1953, the date of the trial. The record shows, however, that appellee did the same kind of work he had been doing before his injury. As to the 50 per cent of incapacity and being permanent, we are of the opinion that such findings are against the weight and preponderance of the evidence and sustain appellant's Point 4. It is stated in Employers Reinsurance Corp. v. Wagner, Tex.Civ.App., 250 S.W. 2d 420, 423:

"In the case of Lumbermen's Reciprocal Association v. Coody, Tex.Civ.

App., 278 S.W. 856, 857, the court, in its opinion, said, 'The object of the Workmen's Compensation Act is to compensate employees for incapacity to work caused by some accident or injury received in the course of their employment. If the employee receives an injury that does not incapacitate him to work, but after receiving the injury he still has the capacity to perform his usual duties and does so, for which he receives in full his usual wages, then he has lost nothing and his injury does not bring him within the law.' As we construe this opinion, it is there held that an employee must prove an economic loss or impairment of his earnings in order to recover compensation benefits and that, failing in such proof, he has not discharged the burden imposed on him by the law and that the mere proof of an injury is not sufficient."

■ Appellant in its tenth point assigns as error the failure of the trial court to grant him a new trial because of the accumulation of improper argument of plaintiff's attorney. It is true there were many statements made before the jury that should never have been made but we consider the following statement made by appellee's attorney to be of such a prejudicial nature that the appellant should have been granted a new trial. While addressing the jury, appellee's attorney made the following argument:

"I want you to go back there and answer these issues. I want you to answer them based on the evidence and when you go back there, gentlemen, and you write your answers to these issues, based on the evidence, I want you to do so well knowing that this twenty-two year old boy—that this is his last day in court; and I don't want you to write a verdict that you might next year or year after next or sometime see him on the street with a, more of a distinct limp, twisted, going back and forth to a doctor and this and that; and say, 'Well, you know, we didn't give enough. That little old $5.00 or

$10.00 a week or $12.00 a week won't pay you for going to see the doctor once a week.' Now, if you'll do that, if you'll write such a verdict—it's a verdict that plaintiff is going to be happy for, and I want to say in closing that that reference about this man's little wife—that would come from an insurance company. Out here in West Texas, we don't go in for that kind of stuff. He told you what—how he was treated, how he felt, and we're not dragging his little wife up here to be badgered around by a bunch of insurance lawyers; and that's the only answer that I have for that, gentlemen; and I thank you."

Similar argument as above was made in the case of Alpine Telephone Corporation v. McCall, Tex.Civ.App., 195 S.W.2d 585, at page 592, and the court there held:

"There can be no doubt that such argument was improper and inflammatory. It was a direct warning that if the jurors should not 'be generous' in their award of damages to Earl they might have regrets in after years because of what their neighbors might say when they saw the boy in his crippled condition. The rule is now settled that when improper argument is of such a nature that its harmful effect could not have been cured by withdrawal of counsel or instruction of the court, or withdrawal or instruction would not have rendered its harmful effect free from doubt under all the circumstances, objection need not be made, and a reversal is required as a matter of law unless under all the circumstances it affirmatively appears no prejudice resulted. Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W. 2d 302, citing: Chapin v. Putnam Supply Co., 124 Tex. 247, 76 S.W.2d 469; Texas Employers' Ins. Ass'n v. Drayton, Tex.Civ.App., 173 S.W.2d 782, W.R.W.M."

Appellant's Point 10 will be sustained.

■■ Appellant by its fourteenth point presents that the trial court erred in refusing to submit to the jury its Requested Issues Nos. 2, 4, and 9. We will only consider the point so far as it relates to the Requested Issue No. 2. It was the contention of appellant as set out in its answer that the plaintiff's earnings and earning capacity was as much or more per week subsequent to May 4, 1952, than it was before May 4, 1952, and that there had been no decrease in plaintiff's earnings and earning capacity. Appellant presented to the court its Requested Special Issue No. 2 as follows:

"*Defendant's Requested Special Issue No. 2*"

"Gentlemen of the Jury:

What sum of money do you find from a preponderance of the evidence constitutes the average weekly wage earning capacity of plaintiff, T. G. Swain, subsequent to May 4, 1952?

Answer in dollars, if any, and cents, if any.

Answer: ————————

Refused:

/s/ Victor H. Lindsey"

The request was refused by the court. It is well settled law of this state that the defendant is entitled to have presented for the jury's consideration all of its defensive matters properly pleaded and supported by the evidence. Since defendant's action is for a general injury and not for a specific injury as covered by Article 8306, Section 12, it is controlled by Article 8306, Section 11, which is as follows:

Art. 8306, sec. 11. "Partial incapacity, compensation

"Sec. 11. While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than Twenty-five Dollars ($25) per week. The period covered by such compensation shall be in no case greater than three

hundred (300) weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of injury."

The Legislature by this act set the basis of determining the amount of compensation in case of partial incapacity at 60 per cent of the difference between his average wages before the injury and his *average weekly wage-earning capacity* during the existence of such partial incapacity but in no case more than $2 per week. (Emphasis ours.)

We are familiar with the holdings of the cases where the judgments have been granted on a percentage of disability but in the case at bar the court was requested to ask the jury to find as designated by the statute. If the Legislature had intended that partial disability determined the amount of recovery, it would have stated so instead of stating that it was the difference between his average weekly wages before the injury and his average weekly wage-earning capacity during the existence of such partial incapacity. This case clearly shows the fallacy of having a jury, to hold the percentage of disability and then take that percentage of his average weekly wage before the injury and then take 60 per cent of that. In this case the jury found plaintiff to be 50 per cent partially disabled permanently and that his average weekly wage before his injury was $88.40. On this basis, 50 per cent of $88.40 would be $44.20 and 60 per cent of that would be $26.52. Under this theory, plaintiff would be entitled to $25 per week but where the party is able to work practically all the time at the same kind of work and at the same rate of pay it is clearly shown that the statute does not mean that the percentage of disability and the average weekly wage-earning capacity are one and the same. The fallacy of the theory whereby the percentage of disability is determined and such percentage applied to the plaintiff's average weekly wage before his injury as a means of ascertaining his average weekly earning capacity is plainly demonstrated in the case of Lloyds Casualty Co. v. Meredith, Tex.Civ.App., 63 S.W.2d 1051, at page 1054, and the cases there cited. Appellant's fourteenth assignment of error is sustained.

Since holding that this case should be reversed, the remaining points of error will not be discussed since they are not likely to arise in another trial.

Case reversed and remanded.