INDEMNITY INSURANCE COMPANY OF NORTH AMERICA v.
HONORABLE HAROLD CRAIK, DISTRICT JUDGE ET AL

No. A-7803. Decided May 24, 1961
(346 S. W. 2d Series 830)

*Agerton, Parker & Snakard and John G. Street, Jr.,* of Fort
Worth, for relator.

*Herrick & McEntire,* of Fort Worth, and *W. James Kronzer,*
of Houston, for respondents.

MR. CHIEF JUSTICE CALVERT delivered the opinion of
the Court.

Respondents' motion for rehearing is granted. The opinions
delivered on February 15, 1961, are withdrawn, and the follow-
ing is substituted as the opinion of the court.

This is an original proceeding in this court in which In-
demnity Insurance Company of North America, relator, seeks
a writ of mandamus to compel Honorable Harold Craik, Judge
of the District Court of the 153rd Judicial District, Tarrant
County, to set aside his order of mistrial and to enter judgment
on the verdict of the jury in Cause No. 10,475-C, Fred A. Mize
vs. Indemnity Insurance Company of North America.

The case in which the order of mistrial was entered is a workmen's compensation case. The parties stipulated that the average weekly wages of the plaintiff, Mize, before his injury was $86.80. In answer to special issue No. 9 the jury found that the plaintiff had sustained a partial disability as a result of his injury, but in answer to special issue No. 13 found that the plaintiff's average weekly wage earning capacity during his disability was $86.80. It was because of Judge Craik's belief that the jury's answers to these issues, considered with the stipulation, were in fatal conflict that he entered his order of mistrial.

We have regarded this case and Employers Reinsurance Corp. v. Honorable William M. Holland, this day decided, 347 S.W. 2d 605, as companion cases and have considered them together. What is said in the opinion in the Holland case need not be repeated here. There is a material difference in the posture of the cases as they come to us. That difference lies in the definitions of "partial incapacity" as given in the Holland case and "partial disability" given in this case. The definition of "partial disability" given in connection with the submission of special issue No. 9 in this case reads as follows:

"By the term 'partial disability' is meant disability less than total where an employee, by reason of injuries sustained in the course of his employment, is only able to perform part of the usual tasks of a workman, but, nevertheless, he is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or he is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depreciation or deduction in his earning capacity."

It is the duty of the court to reconcile apparent conflicts in jury findings if reasonably possible. Ford v. Carpenter, 147 Tex. 447, 216 S.W. 2d 558, 562. The apparent conflict in the jury's answers to special issues Nos. 9 and 13 may reasonably be resolved by a precise interpretation of the definition of "partial disability" by which the jury had to be guided in answering special issue No. 9.

It will be observed that under the foregoing definition the jury could find that the plaintiff had suffered a partial disability without finding that he had suffered "a depreciation or deduction in his earning capacity." Under the definition, the jury was authorized to find partial disability if the plaintiff was

"able to procure and retain employment reasonably suitable to his physical condition and ability to work" even though he had suffered no depreciation in his earning capacity.

It follows that there is no fatal or irreconcilable conflict in the jury's answers to special issues No. 9 and 13, even when considered with the stipulation of the plaintiff's average weekly wages.

The definition used in this case was approved in Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W. 2d 991. We suggest, however, that the punctuation of the definition in the Holland case is more accurate in carrying out the intent of the Workmen's Compensation Act.

We assume that Judge Craik will set aside his order of mistrial and will enter judgment in favor of Indemnity Insurance Company of North America on the verdict of the jury. A writ of mandamus will issue only if he does not do so.

SMITH, CULVER, GREENHILL and STEAKLEY, Justices, concur in the result.

SMITH, Justice (concurring).

I respectfully file this concurring opinion. It is impossible for me to agree that the location of a comma in the trial Court's charge should be controlling. Regardless of the reason for some of the members of the Court suddenly deciding to go the comma route, I still believe that the law as declared in the Court's opinion of February 15, 1961, should be controlling. Therefore, the original opinion, with additions, now becomes the concurring opinion.

This Court is asked by Respondents to hold that "average weekly wages before the injury" is the equivalent of "average weekly wage earning capacity," as those terms are used in Sec. 11, Art. 8306, Rev. Civ. St. 1925. They request this holding notwithstanding that the statute itself defines "average weekly wage" as money actually earned, regardless of capacity to earn from a physical standpoint, availability of work or the numerous other factors affecting actual earnings. See Art. 8309, Sec. 1.

In order to afford Respondents relief, and hold as requested, this Court must:

(1) Rewrite Sec. 11, Art. 8306 and Sec. 1, Art. 8309; and

(2) Require that defendant's counsel argue plaintiff's case.

That this Court must rewrite the statute is clear, for under the provisions of the Workmen's Compensation Act above cited, the terms referred to are not equivalent. Respondents would have the Court substitute "average weekly wage earning *capacity* before the injury" for "average weekly wages before the injury."

Next, let us envision the sort of case presenting this controversy. Counsel have stipulated (or the jury may find) plaintiff's "average weekly wage" during the year immediately preceding the date of injury as $100 per week. There is proof, perhaps uncontroverted, that plaintiff has been regularly and continuously employed for the last several months at a wage of $110 per week. There is further evidence, hotly contested, that plaintiff has done his job well and on his own.

Plaintiff's counsel, in his opening argument to the jury, vigorously asserts that plaintiff was not actually able, i.e., hadn't the capacity, to earn $110 per week in a competitive labor market.

Defendant's counsel now argues to the jury. Must he argue that plaintiff's counsel is right, that plaintiff is in fact unable to earn $110 per week? Must he argue that his own witnesses are wrong? If this Court holds that a jury finding of $110 per week earning capacity during the last several months conflicts with the stipulation, defendant's attorney must so argue. He must argue that his witnesses are wrong, that plaintiff can't earn what he has in fact earned, and request the finding of an amount less than the stipulated wage of $100 per week. Otherwise, a mistrial results. Defendant's attorney is in an intolerable position. He can lose or a mistrial can result—he can't win!

And what of the trial court's position, bearing in mind respondents' continued cries for more speedy disposition of cases. Simply this, that the trial court will retire the jury for further deliberation in the event of inconsistent or conflicting findings in the usual case, thus avoiding a complete retrial of the cause. But if respondents' request is granted here, the trial court can-

not do so. How can the trial court, without committing error, advise a jury that its finding of wage earning capacity during the period of partial incapacity is greater than some stipulation of average weekly wage of which the jury is not aware, and that they must therefore find some lesser amount? It cannot! The result—the case must be tried again, with attendant expense to the courts and the litigants. And unless defendant's attorney argues plaintiff's case, the case must be tried again and again. Of course, plaintiff's counsel understandably desire such a ruling, but I submit that a ruling which produces this illogical result, and strikes to the heart of our adversary system of jurisprudence, would be insupportable.

A jury, in answering the special issues submitted to it on trial of a Workmen's Compensation case, finds among other things, the plaintiff's *average weekly wages before the injury*. This is defined for them in accordance with the definition of that term set forth in Section 1 of Article 8309, Revised Civil Statutes of Texas. Reference to that provision of the statute will show that by definition that term refers to money which the employee *"shall have earned,"* or which another employee *"shall have earned."* Additionally, the jury determines the *average weekly wage earning capacity* during the period of partial incapacity. Conceivably, either or both of these two issues may be resolved by stipulation. But however they are resolved, the issue in the one instance deals with *earnings* and in the other instance with *capacity*. The two are not the same and could not possibly conflict.

For many years plaintiff's counsel in compensation cases have argued, and the Courts have uniformly sustained, the proposition that a man's earning capacity may be less than his actual earnings (Smith v. Consolidate Cas. Ins, Co., 290 S.W. 2d 589); by the same token he may have the capacity to earn substantially more than his actual wages. In other words, plaintiff's counsel have for years argued that earning capacity and actual earnings are not the same, when arguing the question of disability. If earnings do not equal earning capacity, as this Court has held, then it follows that earning capacity does not equal earnings. The latter proposition is the entire premise upon which the alleged conflict rests. The employee's earning capacity while disabled must be less than his earning capacity prior to injury, but the jury does not pass on his earning capacity prior to injury. Instead, the jury finds *"his average weekly wages before the injury* and his *average weekly wage earning capacity* during

the existence of such partial incapacity." Article 8306, Sec. 11 (Emphasis added). The two are not always the same.

The earnings of an employee are influenced by many factors which do not affect his earning capacity. For example, the earnings of an employee engaged in the building trades may be influenced by the weather, labor disputes, and many other factors over which he personally has no control. In such an instance, the employee's wage earning capacity is not affected, while his actual earnings may well be.

The employee's average earning capacity before the injury is not equivalent to his average weekly wages prior to injury. Earning capacity corresponds to, but is not limited to, wages actually earned. Clearly then, the employee's average weekly wage earning capacity may be diminished by injury, but remain greater than his average weeky wage earning.

The 1957 amendment to Art. 8306, Sec. 11 would be nullified by holding a conflict exists.

Prior to 1957, Article 8306, Sec. 11, of the Workmen's Compensation Law was as follows:

"Sec. 11. While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than Twenty-Five Dollars ($25) per week. The period covered by such compensation shall be in no case greater than three hundred (300) weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of injury."

Despite this rather specific statutory language, the Court submitted the issue of partial incapacity in terms of percentage of physical incapacity. Under this interpretation, no issue was submitted concerning the employee's average weekly earning capacity during the period of disability, and the fact that the employee earned as much or more money while disabled than he had averaged for the past year was only some evidence on the issue of percentage of incapacity.

In 1957, the 55th Legislature amended Article 8306, Sec. 11, by adding the following sentence:

"Compensation for all partial incapacity resulting from a general injury shall be computed in the manner provided in this Section, and shall not be computed on a basis of a percentage of disability."

The Legislature's obvious intent in amending this Section was to reject the interpretation put on it by the Courts and to return to the method provided by the statute. In rejecting the percentage of disability method, the Legislature also rejected the Court's determination that "average weekly wages" was equivalent to average weekly wage earning capacity, under the Act. This is the only possible reason for rejecting the method of computing compensation by percentage of disability. If "average weekly wages" and average weekly wage earning capacity prior to injury were synonymous, the percentage of disability method of computing compensation and the statutory method would both give the same figure.

Respondents, who opposed this Amendment in the Legislature, now ask this Court to destroy the Amendment, having lost their legislative battle. They are more subtle, but the purpose is obvious!

Assuming that the present majority is essentially the same as the original dissent (Holland), the question recurs: In the actual application of Section 11, Article 8306, are "average weekly wages before the injury" and "his average weekly wage earning capacity during the existence of such partial incapacity" one and the same? The question is presented within the framework of a determination whether jury findings are in irreconcilable conflict and of course the question should be approached within this framework.

I repeat it is a basic principle that it is the duty of the court to reconcile allegedly conflicting findings if it is possible to do so. In the face of this basic principle, however, I find the majority in the Holland case taking the position that the legislature must have intended average weekly wages to equal average weekly wage earning capacity because, under subdivision 2 of Article 8309, the legislature said that A's average weekly wage earning capacity (even if he was a double amputee) was "what some other person had earned." In other

words, the majority says in support of its position that what Mr. Jones actually made in dollars and cents is the equivalent of Mr. Smith's physical earning capacity. I submit that this is not an attempt to reconcile supposedly conflicting jury findings and that the necessity for such a position to support another proposition is some indication of the weakness of the latter.

Whether there be a comma, semi-colon or a total absence of any mark of punctuation, in the definition of partial incapacity used by a particular trial court, it must be admitted that to sustain respondents' position in this cause will require the Court to add the word "incapacity" to the statute (Sec. 11, Article 8306) as written by the legislature, and that in so doing the Court is stepping beyond its province. The majority opinion does just this—in substance, the majority says that the purpose of the statute is to compensate for diminished earning capacity, referring to its decision in *Clack,* and the legislature having done a poor job in writing the statute to effectuate the purpose of the statute as announced in the Clack decision, it must be revised or rewritten. There is no escape from the conclusion that if respondents' position is sustained, that Section 11 of Article 8306 will have been as effectively rewritten as if the legislature, by House Bill No. 1, had amended the Statute to insert the word "capacity" in the statute.

As the statute now reads, average weeky wage is not the same as average weekly wage earning capacity; they will be the same only if this Court is willing to in effect amend the statute to provide what it believes the legislature should have provided.

The relator, Indemnity Insurance Company of North America, seeks by way of writ of mandamus to require the Honorable Harold Craik, District Judge of the 153rd District of Tarrant County, to enter judgment on a verdict returned by the jury in the cause of Fred A. Mize v. Indemnity Insurance Company of North America, now pending in that court and to set aside his order therein of February 24, 1960, declaring a mistrial. That order is as follows:

"* * * After considering the briefs and argument of counsel, the Court finds that when the stipulation of the parties that the Plaintiff's average weekly wage was $86.80 is taken into consideration there is an irreconcilable con-

flict between the jury's answers to Special Issues Nos. 9 and 13, such issues and answers being as follow:

" 'Special Issue No. 9:

" 'Do you find from a preponderance of the evidence that the plaintiff has sustained or will sustain any partial disability as a result of the injury, if any, inquired about in Special Issue No. 1?

" 'Answer "yes" or "no". Answer: Yes

" 'If you have answered Special Issue No. 9 "no," you will not answer Special Issues Nos. 10, 11, 12 and 13; but if you have answered Special Issue No. 9 "Yes," then answer:

\* \* \* \* \*

" 'Special Issue No. 13:

" 'Find from a preponderance of the evidence the weekly wage earning capacity of the plaintiff during the period of such partial disability, if any, inquired about in Special Issue No. 9.

" 'Answer in dollars and cents, if any.

" 'Answer: $86.80;'

and because of such irreconcilable conflict, and for no other reason, the Court is of the opinion that Defendant's First Amended Motion for Judgment on the Verdict should be overruled and that plaintiff's Motion for Mistrial should be granted, \* \* \*."

Thus, it is seen that the only reason given by the court for granting respondents' motion for mistrial was that the answer of the jury to Special Issue No. 9 that the plaintiff had sustained partial disability and the jury's answer to Special Issue No. 13 that the weekly wage earning capacity of the plaintiff during such period of partial disability was $86.80 were in irreconcilable conflict in view of the stipulation of the parties that the plaintiff's-respondent's average weekly wage was $86.80.

The controlling question to be decided here is: Do the jury

findings on the record before us present an irreconcilable conflict such as to prevent the entry of a judgment?

Relator contends that no irreconcilable conflict exists. If that contention is correct, it follows that it was the ministerial duty of the trial judge to enter judgment on the verdict. Courts are vested with no discretionary power to set aside jury answers which are responsive to proper issues presented by the pleadings and submitted to the jury by the court. See Gulf, C. & S. F. Ry. Co. v. Canty, 115 Tex. 537, 285 S.W. 296, and Cortimeglia v. Davis, 116 Tex. 412, 292 S.W. 875.

Relator contends that the jury's finding of partial disability can be reconciled with the stipulation that respondent Mize's average weekly wages before the injury were $86.80 and the jury's finding that respondent Mize's average weekly wage earning capacity during the period of his partial disability was $86.80. We sustain this contention. We hold that the jury's finding of partial disability is not necessarily a finding of a reduction in earning capacity as contended by the respondents; "average weekly wages" is not and cannot be a measure of earning capacity; "average weekly wage earning capacity" is not the equivalent of "average weekly wages."

The argument of respondents that Article 8306, Sec. 11,[1] Vernon's Annotated Civil Statutes, under which the issues on partial disability were submitted affords support for the contention that the jury's finding of partial disability is necessarily a finding of a reduction in earning capacity is untenable. The jury answer and the stipulation when considered in the light of the statutes are not in irreconcilable conflict.

When it is claimed that there is a conflict in jury findings, "it is the duty of the trial court to reconcile apparent conflicts of the jury's findings if this can reasonably be done in the

---

1.    "While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than Thirty-five Dollars ($35) per week. The period covered by such compensation shall be in no case greater than three hundred (300) weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of injury. Compensation for all partial incapacity resulting from a general injury shall be computed in the manner provided in this Section, and shall not be computed on a basis of a percentage of disability."

light of the pleadings and the evidence, the manner in which the issues were submitted, and in view of the other findings when considered as a whole." Ford v. Carpenter, 147 Tex. 447, 216 S.W. 2d 558, 562.

If there is a reasonable basis upon which jury answers may be reconciled, the courts should not strike down the answers on the ground of conflict. It is presumed that jurors intended to return an answer to each issue consistent with the pleadings and the evidence, and not in conflict with each other. See Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W. 2d 97.

Respondents urge that a finding of partial disability is equivalent to a finding that the earning capacity has been diminished and squarely conflicts with the jury finding in effect that the earning capacity had not diminished or that it is the same as it was before the injury. The employee's earning capacity while disabled must be less than his earning capacity prior to injury, but the jury does not pass on his earning capacity prior to the injury. The jury in a properly submitted case finds *"his average weekly wages before the injury* and *his average weekly wage earning capacity* during the existence of such partial incapacity." See Article 8306, supra. The two are not always the same. We reiterate that a finding of partial disability is not necessarily a finding of a reduction in earning capacity. Compensation is not awarded for an injury but only for a diminished earning capacity. See Texas Employers' Insurance Ass'n v. Swaim, Tex. Civ. App., 278 S.W. 2d 600, wr. ref. n.r.e.; American Mutual Liability Insurance Co. v. Wedgeworth, Tex. Civ. App., 140 S.W. 2d 213 wr. dism.; Texas Employers' Ins. Ass'n v. Hamilton, Tex. Civ. App., 95 S.W. 2d 767, wr. dism.; Traders & General Insurance Co. v. O'Quinn, Tex. Civ. App., 111 S.W. 2d 859, wr. ref.

While the jury found that the employee had suffered a partial disability, the extent of that disability is to be measured by the jury only in terms of the statutory formula. We cannot agree with respondents that the legislature "statutorily" assummed that the amount of wages paid an employee prior to his injury necessarily would represent his *ability* to earn that sum of money and that that sum represented his true "earning capacity" for purposes of applying the Compensation Act. To hold with the respondents would necessitate a rewriting of the pertinent statutes and a substitution of "average weekly wage earning *capacity* before the injury" for "average weekly wages

before the injury." The legislature has used language in Section 11, Article 8306, supra, and Section 1 of Article 8309, Vernon's Annotated Civil Statutes, which unmistakably leads to the conclusion that "average weekly wages before the injury" is not the equivalent of "average weekly wage earning capacity." In this case, the parties stipulated as to Mize's average weekly wage rate at the time of the injury. The definition of "average weekly wage before or at the time of the injury as contained in Section 1, Article 8309, supra, clearly refers to money which the employee *"shall have* earned," or which another employee *"shall have* earned." The question as to Mize's average weekly wage earning capacity during the period of partial incapacity was submitted to the jury. Whether these issues are determined by stipulation or by jury verdicts, the fact remains that "average weekly wage" deals with earnings and "average weekly wage earning capacity" deals with capacity. The word "capacity" does not appear in the definition of "average weekly wages."

In 1957, the legislature amended Section 11, Article 8306, supra, in two particulars. The amendment pertinent here is the addition of the sentence—"Compensation for all partial incapacity resulting from a general injury shall be computed in the manner provided in this Section, and shall not be computed on a basis of a percentage of disability." This amendment manifests the clear intention of the legislature to reject the "percentage of disability" method of submission to juries, and to forestall any possibility of a holding by the courts that "average weekly wages" is equivalent to "average weekly wage earning capacity" under the Act.

Respondents rely upon the case of Maryland Casualty Company v. Drummond, Tex. Civ. App. (1938), 114 S.W. 2d 356, wr. ref. In that case Drummond, the claimant, was seeking weekly compensation. The court held that his weekly compensation must be fixed under Section 1, first subdivision 3[2] of Article 8309, Vernon's Annotated Civil Statutes. Subdivision 3 was applicable for the reason that the jury had found in response to proper issues that Drummond had not been employed

---

2.      "3.   When by reason of the shortness of the time of the employment of the employee, or other employees engaged in the same class of work in the manner and for the length of time specified in the above Subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the Board in any manner which may seem just and fair to both parties."

for substantially the whole of the preceding year, and that there was not any other employee of the same class who had been working substantially the whole of the year in the same or similar employment in the vicinity in which Drummond had been employed. It was the duty of the trial court under the evidence to fix his compensation "in any manner which may seem just and fair to both parties." The insurer was contending that the trial court had unduly limited the scope of the inquiry, and had not taken into consideration evidence that while the injured employee was working at the time of the injury as an unskilled laborer, yet, if permitted, it could be shown that he was, in fact, a skilled electrician and mechanic, and that compensation should be fixed on the basis of earning capacity as a skilled laborer.

In the Drummond case there was involved a different question than the one presented here. However, we fail to find language which would even indicate that the court was of the opinion that *"average weekly wages before the injury"* was and is equivalent to *"average weekly wage earning capacity."* There is no holding in the opinion which directly or by implication tends to run contrary to the holding herein made that "average weekly wages before the injury" is not the equivalent of "average weekly wage earning capacity." This is equally true as to the case of Employers' Insurance Ass'n v. Clack, 134 Tex. 151, 132 S.W. 2d 399, cited by the respondents in the case of Employers Reinsurance Corporation v. Honorable William M. Holland, District Judge et al.

The amount of earnings and wages paid and received subsequent to the injury may be considered as evidentiary of earning capacity, but such evidence is not conclusive. See Consolidated Casualty Ins. Co. v. Smith, Tex. Civ. App., 309 S.W. 2d 80, wr. ref. n.r.e. This is the only logical conclusion that can be reached in this case, especially in view of the definition of *partial disability*[3] given in the court's charge, and the provisions of Section 11, Article 8306, supra. This section provides that compensation for partial incapacity for work shall be computed

---

3. "By the term 'partial disability' is meant disability less than total where an employee, by reason of injuries sustained in the course of his employment, is only able to perform part of the usual tasks of a workman, but, nevertheless, he is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or he is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depreciation or deduction in his earning capacity." (Page 3, Exhibit 3 to Relator's Petition).

on the basis of 60 per cent of the *difference* between the "average weekly wages" before the injury and the "average weekly wage earning capacity" during the existence of such partial incapacity and in no other manner.

It should be noted that the definition of "partial disability", supra, is stated clearly in the alternative. The definition as given in the court's charge finds approval in Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W. 2d 991. The first alternative is whether by reason of the injury the employee "is only able to perform part of the usual tasks of a workman, but, nevertheless, he is able to procure and retain employment reasonably suitable to his physical condition and ability to work." The second is "or he is only able to perform labor of a less remunerative class than he performed prior to his injury, whereby he suffers a depreciation or deduction in his earning capacity." Under this definition, it was reasonable for the jury to think there was no conflict in its answers. It is not unreasonable to conclude that the jury in finding "partial incapacity" intended by that answer to find only that Mize was " * * * only able to perform part of the usual tasks of a workman, but nevertheless, he is (was) able to procure and retain employment reasonably suitable to his physical condition and ability to work * * *". Such a finding would not and does not conflict with the finding by the jury that Mize had a weekly earning capacity of $86.80 after April 28, 1958, the date of the injury.

Under Section 1, Article 8309, Vernon's Annotated Civil Statues, "average weekly wages" as defined in subparagraph 1, involves a computation based upon the earnings of the claimant in the employment in which he was engaged at the time he was injured. "Average weekly wage earning capacity", however, is not so confined by statute. The jury in making this determination may consider any essential fact which bears upon the claimant's earning capacity, including his actual earnings after the injury. To hold otherwise would in a sense place the court in a position of seeking obstacles between jury findings rather than following its duty to reconcile conflicts if at all reasonably possible to do so.

Under the terms of Section 11, Article 8306, supra, partial incapacity is compensable only if there is a *difference* between the "average weekly wages" before the injury and the "average weekly wage earning capacity" during the existence of partial incapacity. Since the jury in this case has found "no dif-

ference", the injury is noncompensable. See Texas Employers' Insurance Ass'n v. Upshaw, Tex. Civ. App., 329 S.W. 2d 144, wr. ref. n.r.e.

Respondents rely upon the case of Fidelity & Casualty Co. of New York v. Stephenson, Tex. Civ. App., 325 S.W. 2d 461. The Court of Civil Appeals there held the jury's findings to be in conflict and denied the application for the writ of mandamus. This holding was made in the light of the definition of "partial incapacity" or "partially incapacitated" [4] as contained in the court's charge. It is to be noted that the definition is differently framed. Whether or not the court was correct in its holding is immaterial. It is sufficient to say that the decision is not sufficiently persuasive to induce us to reach the same result here.

For the reasons stated, the petition for writ of mandamus is granted, and the trial court is directed to set aside its order of mistrial, reinstate the jury verdict, and to proceed to a further trial and to the entry of a judgment in a manner not inconsistent with this opinion.

---

4.    "Where an employee by reason of any  injury sustained in the course of his employment is only able to perform part of his regular labor, or a less remunerative class than he performed prior to his injury, whereby he suffers a depreciation or reduction in his ability to work and earn money."