**PHOENIX INSURANCE COMPANY, Appellant,**

**v.**

**Jack THOMAS, Appellee.**

**No. 6868.**

Court of Civil Appeals of Texas.

Beaumont.

Oct. 26, 1967.

Rehearing Denied Nov. 15, 1967.

Orgain, Bell & Tucker, Beaumont, for appellant.

Joe H. Tonahill, Jasper, for appellee.

PARKER, Justice.

This is a Workmen's Compensation case. Plaintiff, Jack Thomas, recovered a judgment against the defendant, Phoenix Insurance Company, for $8,365.84, interest and costs. The case was submitted to the jury upon special issues wherein the jury found plaintiff sustained an accidental injury in the course and scope of his employment, resulting in permanent partial incapacity, which caused a $30 per week difference between plaintiff's average weekly wage before the injury and his average weekly wage earning capacity after the injury. The parties will be designated as in the trial court.

It was stipulated plaintiff's average weekly wage prior to injury was $80.00. In answer to special issue No. 7 the jury found that the plaintiff sustained partial incapacity as a natural result of the accidental injury. In answer to special issue 3A the jury found plaintiff sustained "any incapacity" as a natural result of the accident. Special issue No. 10 was submitted and answered as follows:

"If you have answered the foregoing Special Issue No. 7 'Yes', then answer the following special issue:

"SPECIAL ISSUE NO. 10

"What do you find from a preponderance of the evidence to be the difference, if any, between the plaintiff's average weekly wage before the injury, if any, and the average weekly wage earning capacity, if any, after the injury during the existence of such partial incapacity?

"Answer in dollars and cents, if any.

"Answer: $30.00

"In answering the foregoing issue, you will consider only the difference, if any, between the plaintiff's average weekly wage before the injury, if any, and the average weekly wage earning capacity, if any, after the injury during the existence of such partial incapacity, if any, inquired about in Special Issue No. 7."

The judgment of the court recites:

"and the jury having found in answer to Special Issue No. 10 that the plaintiff's *average weekly wage earning capacity after the injury* and during the existence of the partial incapacity was Thirty ($30.00) Dollars per week, which weekly rate as provided in the Workmen's Compensation Law of Texas permits the plaintiff to recover of and from the defendant Thirty ($30.00) Dollars per week for 300 weeks from February 11, 1965; and, of which amount of Workmen's Compensation benefits allowed the plaintiff when reduced to a lump sum as stipulated and agreed by and between the parties in chambers is computed whereby as of January 22, 1966 the amount of One Thousand Four Hundred Ninety-Seven and 37/100 ($1,497.37) Dollars for accrued compensation benefits and four per cent (4%) compound interest thereon is due and owing, followed by 251 weeks unaccrued compensation benefits at Thirty ($30.00) Dollars per week due and owing, when reduced to a lump sum discounted at four per cent (4%) compound interest amounts to Six Thousand Eight Hundred Sixty-Seven and 57/100 ($6,867.57) Dollars unaccrued lump sum benefits due and owing the plaintiff; making the total present value of the Workmen's Compensation benefits due and owing the plaintiff as found by the jury as of January 22, 1966, the sum of Eight Thousand Three Hundred Sixty-

Five and 84/100 ($8,365.84) Dollars presently due and owing the plaintiff by the defendant;" (Emphasis added)

In its first point of error defendant contends there is no finding of reduced wage earning capacity by the answer of the jury to special issue No. 10; that the plaintiff was entitled at the most to 60% of any diminished wage earning capacity for 300 weeks and not the entire $30.00 per week. These contentions are sustained. The jury did not find that the plaintiff's average weekly wage earning capacity after the injury was $30.00 per week, but found that the difference between the average weekly wage before the injury and the average weekly wage earning capacity after the injury was $30.00 per week. At the most, plaintiff was entitled to recover only 60% of $30.00 a week for 300 weeks. Art. 8306, Sec. 11, Vernon's Ann.Civ.St.; Travelers Ins. Co. v. Dycus, 163 Tex. 152, 352 S.W.2d 458 (1962).

■ Defendant contends the jury in answering special issue No. 10 could find a difference in average weekly wage prior to injury and the average weekly wage earning capacity after injury which would be upward and not downward. The plaintiff testified that following the injury of February 11, 1965 he lost one day only from work, found a new, better job, passed a physical examination and made $106.00 a week, which he left only because he had to go into service. Defendant's point of error No. 1 is sustained.

■ Defendant, in its point of error No. 2, contends the trial court erred in overruling its objections to special issue No. 10, one of the objections being it did not properly submit the question of plaintiff's partial incapacity.· The proper manner to submit this is to be found in Employers' Reinsurance Corp. v. Holland, 162 Tex. 394, 347 S.W.2d 605 (1961); Indemnity Ins. Co. of North America v. Craik, 162 Tex. 260, 346 S.W.2d 830 (1961); Texas Employers'

Ins. Ass'n v. Jones, 281 S.W.2d 98 (Tex. Civ.App.1955, n.w.h.). There being probative evidence that plaintiff's average weekly earning capacity after the injury was more than $80 a week, the issue was not properly submitted. With evidence of increased average weekly earning capacity after the injury, no judgment could be based on the answer of the jury to special issue No. 10. Point of error No. 2 is sustained.

Special issue No. 7 is as follows:

"Do you find from a preponderance of the evidence that the plaintiff, Jack Thomas, sustained any partial incapacity as a natural result of the accidental injury, if any, inquired about in Special Issue No. 3?

"Answer 'Yes' or 'No'.

"Answer: Yes"

Defendant's third point of error is:

"The trial court erred in submitting Special Issue No. 7 over defendant's objections thereto, since the issue was erroneous on the following grounds:

"(a) Duplicitous and multifarious in asking:

(1) Whether plaintiff suffered any incapacity;

(2) Which was partial; and

(3) Which naturally resulted from the injury of February 11, 1965."

In the court's charge the jury was instructed:

"that by the term 'natural result', as used in this Charge, is meant that result produced by an injury, if any, or injuries, if any, by itself or by themselves or in connection with another cause or other causes in the usual course of events, in a natural and continuous sequence, and which result would not have occurred but for such injury, if any, or injuries, if any."

In answer to special issues numbered below the jury found as indicated:

1. Plaintiff sustained an injury to his body on or about February 11, 1965.

2. Such injury was accidental.

3. Such injury was received by plaintiff in the course of his employment.

3A. Plaintiff did sustain "any incapacity" as a natural result of the accident of February 11, 1965.

3B. The incapacity was not temporary.

3C. Such incapacity was not total.

3D. Was not answered because of the "no" answer to 3C.

4. Plaintiff did not sustain total incapacity as a natural result of the accidental injury.

5. and 6. were not answered.

◼ By virtue of the definition of "natural result" producing cause was submitted in 3A. Plaintiff's objections to No. 7, when considered in connection with the definition of "natural result" and the findings of the jury in response to special issues 1, 2, 3, 3A, 3B, 3C and 4, are not objectionable as assuming such partial incapacity naturally resulted from the injury. Russell v. Great American Indemnity Co., 127 Tex. 458, 94 S.W.2d 409 (1936). It is unlikely that the jurors were confused by special issue No. 7 or led to believe that the trial court was of the opinion that Jack Thomas suffered any incapacity which was partial, which naturally resulted from his injury of February 11, 1965. Reasonably, it is not considered to be a comment upon the weight of the evidence. Meyer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W.2d 575 (1955). On page 578 of such opinion, the court said:

"This court has held in several types of cases that various subsidiary facts or elements constitute, and are properly submitted in a single ultimate issue. See

Howell v. Howell, 147 Tex. 14, 210 S.W. 2d 978."

◼ We do not consider the opinion in American General Ins. Co. v. Coleman, 297 S.W.2d 333 (Tex.Civ.App.1956, wr. ref. n. r. e.), is applicable to the instant case. In such case special issue No. 1, the sole issue to the jury, was objected to as being multifarious and submitted more than one ultimate issue of fact. That is not true in the instant case. Defendant's third point of error is overruled.

Special issue No. 9 and the jury's answer is as follows:

"For what period of time, if any, do you find from a preponderance of the evidence that such partial incapacity, if any you have found, has continued or will continue from the date of its beginning, if any?

"Answer 'Permanent,' or answer by stating the number of weeks, if any, or answer 'None.'

"Answer: 'Permanent'."

Defendant's fourth point of error contends the issue as submitted required defendant to produce a preponderance of the evidence in order for the jury to answer "none"; and the court erroneously placed the burden of proof on defendant; and further, the issue was duplicitous and, in effect, was a comment upon the weight and sufficiency of the evidence by the trial court. Appellant's fourth point of error is without merit and is overruled.

During the closing argument to the jury by plaintiff's attorney, defendant objected to statements and arguments thereon made by plaintiff's attorney. Such objections were overruled. As each objection was overruled and immediately after plaintiff's attorney's closing argument, defendant moved for mistrial. Each of such motions for mistrial were denied. Then, defendant moved the court to re-open the case and permit the reading of defendant's Exhibit

No. 8 to the jury. This was refused. In the ensuing paragraphs, the parts of the record germane to the errors in such closing argument are set forth.

This suit was filed August 16, 1965. The first term thereafter was January 1966. At the first call of the docket on December 21, 1965 plaintiff's attorney requested that the case be set for the week of January 17, 1966. It was so set and was number 15 on the docket at that time for the week. On January 14, 1966 defendant filed motion for continuance, not for the term, but only for a re-setting for the week of January 31st or the week of February 14, 1966 for the reason that defendant's counsel had a case of his assigned as No. 1 in the 60th District Court of Jefferson County, Texas, for Monday, January 17, 1966 which had been on file since 1961. Defendant's motion for continuance or re-setting in the Jasper County case was resisted by plaintiff, mainly upon the ground that:

"plaintiff is on assignment to Korea for active duty in the period of a few days and may have to report sometime during the week of January 14th, 1966 for transportation to Korea in the service of his country. It would, therefore, be to his great detriment to continue this case and would be a denial of justice."

Defendant's motion for continuance was overruled on January 17, 1966. On January 17, 1966 defendant's counsel, Howell Cobb, was in trial in the Jefferson County case. Defendant filed a motion for continuance based upon such fact, not seeking a continuance for the term but for a re-setting of the case for either of the two remaining jury weeks in the District Court of Jasper County, Texas, or, because of his knowledge of the fact that the plaintiff was going overseas, requested the trial court to inquire about the time plaintiff had to go overseas to the end that plaintiff obtain a trial of his case when he could be present and Cobb present also. This motion was in the form of a telegram which the court received before 9:00 a.m. on Tuesday,

January 18, 1966. Plainly, the trial court was trying to get a trial of the case before plaintiff went overseas and at the same time allow Mr. Cobb to try the case. A jury was selected by an associate of Mr. Cobb's on the 18th with the court delaying presentation of the evidence until Friday, January 21, 1966. By that time, Mr. Cobb had been released from the Jefferson County case and was present. The case was argued and presented to the jury on Saturday, January 22, 1966. Defendant's Exhibit No. 8 is as follows:

"Beaumont, Texas Jan. 17, 1966.
Judge O'Neal Bacon, Positively has be dld by 9 A.M.

Jasper County Courthouse Jasper Tex.
Re Number 7424—Jack Thomas vs Phoenix Insurance Co. District Court Jasper County. Please accept this telegram as renewal of my motion for continuance, or, alternatively motion to postpone captioned cause until I am no longer in trial here in Beaumont. I do not request continuance for term, but merely until trial I am presently engaged in is submitted to jury.

I am in trial in 60th District Court in Cause number B78398 which was filed November 21, 1961 and after numerous settings On June 17, 1965 the Court set it for January 17, 1966. Thomas vs. Phoenix was filed August 16, 1965, and on December 21, 1965, set for January 17, 1966, its first setting.

Call of docket in 60th Court was January 7, 1966, and B78398 was number one, and I was assigned to trial in B78398 in Jefferson County on such date for January 17, 1966.

Civil action number 4830, U S District Court, Beaumont, was set number one for January 17, 1966 by Judge Joe Fisher during week of Jan 3, 1966.

No. 7424, Thomas v. Phoenix, Jasper County District Court was number 15, and jury was to be selected January 17, 1966.

I informed the Court of conflicts and previous settings, and requested continuance, not for term, but until January 31, or February 14, 1966. Motion was overruled and Court ordered me to 'send someone' to select jury in Number 7424 by 1 p.m. January 17, 1966, such order being made by telephone.

Although Phoenix Insurance Co., defendant, has designated me personally, and not my law firm as its counsel, I arranged for my partner to select a jury. I am told by you that case will be tried Tuesday January 18, 1966. I am in trial in B78398, 60th District Court Jefferson County, Beaumont, I have no authority to appoint substitute counsel at this first setting of number 7424.

Urgently request and petition Your Honor to delay trial until I am out of trial in Beaumont.

I am informed by you that plaintiff, suing for total permanent disability, must report for overseas duty this week. I do not know if this is correct, and request and suggest the Court to determine this, since plaintiff has been drafted into the army since the alleged accident of February 11, 1965, and is considered by the United States Army fit for combat duty.

Thomas vs. Phoenix, Number 7424, can and will be tried by me when I finish case I am now in.

This is, in effect, first motion, and I desperately need the Court's aid to protect defendant's right to a fair hearing, which include its right to representation by counsel of its choice.

Please, Judge Bacon, withhold further action in this case until I am out of trial. I will promptly come to Jasper for trial. Please, if you deem it necessary, check with Judge Joe Fisher and Judge Gordon Gary concerning these matters.

If you proceed to trial in my absence, please have Court Reporter report all testimony, ruling of Court, and other pertinent matters, since I have what I consider to be valid defenses to this suit. Respectfully—Howell Cobb Attorney for Defendant, Phoenix Insurance Co."

Plaintiff Thomas testified he was inducted in the service, passing a physical examination in Houston several months after his injury of February 11, 1965. He was a cannoneer in a replacement company but not on limited duty. He was going to Korea and probably as a replacement to Viet Nam.

On Saturday, January 22, 1966 in his closing argument, plaintiff's counsel's statements, the objections and motions for mistrial are hereinafter set forth:

"Plaintiff's counsel argued:

"Now, speaking of duty, what kind of duty does a lawyer have to a jury? A lawyer has the duty to a jury to be forthright—forthright in all respects. It wasn't the issue of Mr. Cobb being in Beaumont this week in another court. You heard the evidence and it's in the record here that when he took this man's deposition December 10, he asked him, 'You're going to go overseas?' 'Yes, I'm going about February 1.' And Mr. Cobb didn't want to try this case this week, he wanted to try it February 14 when the man was in Viet Nam. Now he said that's not in issue about him being drafted and going overseas. It's a big issue, because this insurance company, through their typical defense, insurance corporation lawyers, who has come here and distorted facts—

BY MR. COBB: Your Honor, I'm going to object to him bringing in personalities and accusing me of personal things, and I demand that I be allowed to reply to that. I don't think he should accuse me of being unfair with the Court, typical defense tactics, dealing in personalities.

BY THE COURT: The objection will be overruled, the request will be denied.

BY MR. TONAHILL: Wanting this man—

BY MR. COBB: May I approach the bench?

BY THE COURT: Yes, sir, counsel, approach the bench. (Following out of the hearing of the jury).

BY MR. COBB: Due to that prejudicial argument I move for a mistrial.

BY THE COURT: Motion will be denied."

"Plaintiff's attorney continued:

"Wanting this man to face trial when he couldn't be here, but he's here and having his day in court."

"And:

"Mr. Cobb, in typical defense lawyer techniques says, 'I don't believe he's disabled. I don't believe he got hurt, I don't believe he sustained an injury, but if he's disabled it isn't permanent, it's only partial.' He says he didn't get hurt but if he did get hurt it's partial. His whole argument is partial as opposed to mine being total and permanent. But he says he didn't get hurt and if he did, it's partial. Now, isn't that typical? Isn't that what you'd expect of a man that doesn't want this case tried until February 14 when this boy is over in Viet Nam? Isn't that typical distortion? Misrepresentation?

BY MR. COBB: I object again to those things, Your Honor, I object to it and ask the jury to disregard it.

BY THE COURT: The objection will be overruled.

BY MR. COBB: I renew my motion.

BY THE COURT: Motion denied. Continue counsel.

BY MR. TONAHILL: Therefore it has become highly relevant about his being drafted. That's what—that makes it relevant, his going overseas and couldn't be here when he wants the case tried on February 14, and that's what the record shows."

Then, after plaintiff's attorney's argument, the following occurred:

"BY MR. COBB: Your Honor, we would move the Court to allow the evidence to be re-opened so that we could introduce what is now marked as Defendant's Exhibit No. 8, a telegram, which I believe you did receive on Tuesday morning.

BY THE COURT: Yes, sir. It was read, and the telegram was read to the Court shortly before nine o'clock A.M.

BY MR. COBB: From the telegraph office?

BY THE COURT: The record will reflect the telegram itself was delivered on Wednesday.

BY MR. COBB: But the substance of it or the entire thing was read to you at 8:50 a.m.?

BY THE COURT: Yes, sir, and read to the reporter and taken down in shorthand by the reporter at 9:15 a.m. on Tuesday of this week.

BY MR. COBB: We offer in connection with Mr. Tonahill's repeated reference concerning the dishonest and manipulative efforts of the defense counsel because it plainly states I wanted to just wait the rest of this week and if you do proceed to go to trial without me to just make a record, and Mr. Tonahill knowingly and falsely stated that I requested and wanted this case, as late as Tuesday of this week or as late as yesterday of this week, put off until February 14, when that telegram reflects to the contrary and he was aware of it and the Court was. In connection with his remarks there, I renew my motion for mistrial.

BY THE COURT: Both motions will be denied. Anything further, gentlemen?"

438

The closing argument of plaintiff's attorney was so inflammatory, prejudicial and improper that each and all of defendant's points of error relating to such closing argument are sustained. It was an appeal to the natural prejudice of the jury against Cobb and his client by accusing them of wanting to deprive the plaintiff of a trial before he went overseas. Further, the argument accused defendant and defendant's counsel of deceit, fraud and dishonesty, based upon motions for continuance not in evidence but known to plaintiff's counsel and the court as not fairly reflecting desire on the part of Cobb or his client to deprive plaintiff of a trial of his case with him present before he went overseas. Such argument was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Under Rules 434 and 503, Texas Rules of Civil Procedure, and Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953), defendant's points of error on the closing argument are sustained.

The judgment of the trial court is reversed and remanded.