The HOME INDEMNITY COMPANY, Relator,

v.

The Hon. James A. McKAY, Jr., and Lulu Belle Flores, Respondents.

No. 15580.

Court of Civil Appeals of Texas, San Antonio.

Oct. 27, 1976.

Kenneth L. Clark, Clark, Thornton & Summers, San Antonio, for appellant.

James R. Warncke, San Antonio, for appellee.

KLINGEMAN, Justice.

This is an original proceeding in this Court in which the Home Indemnity Company, relator, seeks a writ of mandamus to compel Honorable James A. McKay, Jr., District Judge of the 150th Judicial District Court of Bexar County, Texas, to enter judgment on the verdict in Cause No. 74–CI–9607, *Lulu Belle Flores v. The Home Indemnity Company, Inc., a/k/a The Home Indemnity Company,* and to set aside his order therein declaring a mistrial.

The case in which the order of mistrial was entered is a workmen's compensation case. Trial was to a jury, and during the process of the trial the parties stipulated that the average weekly wage of the respondent, Lulu Belle Flores, for the purpose of the trial, was $80.77.

The only special issues submitted may be summarized as follows:

1. Plaintiff received an injury on or about March 15, 1974.

2. She was injured in the course of her employment.

3. The injury was not a producing cause of any total incapacity.

4. The injury was a producing cause of some partial incapacity.

4A. The partial incapacity began on March 19, 1974.

4B. The partial incapacity ended on April 19, 1974.

4C. Plaintiff's average weekly earning capacity during partial incapacity was $80.77.

5. Chiropractic and physical therapy services were reasonably required as the result of such injury.

5A. The reasonable cost of such required chiropractic and physical therapy services was $455.00.

Defendant filed a motion for judgment asserting that under the jury verdict, when considered in connection with the stipulation made by the parties, plaintiff was entitled to a judgment of $455.00 for past chiropractic and physical therapy services, and that defendant was entitled to a take-nothing judgment as to plaintiff's claims for all other workmen's compensation benefits. Plaintiff filed a motion for mistrial alleging that the jury's answers to Special Issue No. 4 and Special Issue No. 4C are in irreconcilable conflict and will not support a judgment, requiring a mistrial. The trial court overruled defendant's motion for judgment, finding that the answers to such issues are irreconcilable conflict, and also granted plaintiff's motion for mistrial on the same grounds.

The special issues submitted to the jury were submitted in accordance with the new Texas Pattern Jury Charges. The definitions of "total incapacity," "partial incapacity," and "earning incapacity" are identical with the definitions given in PJC 22.02 (Vol. 2, 1970). The pertinent definitions here involved are as follows:

'PARTIAL INCAPACITY' means any degree of incapacity less than total incapacity, whereby a person suffers a reduction in earning capacity.

A person cannot have both total and partial incapacity at the same time.

'EARNING CAPACITY' means ability and fitness to work in gainful employment for any type of remuneration, including salary, commissions, and other benefits, whether or not the person is actually employed. It does not necessarily mean the actual wages, income, or other benefits received during the period inquired about.

Both parties cite and rely on our Supreme Court's decisions in *Employers Reinsurance Corporation v. Holland*, 162 Tex. 394, 347 S.W.2d 605 (1961), and *Indemnity Insurance Co. of North America v. Craik*, 162 Tex. 260, 346 S.W.2d 830 (1961). Respondent asserts that the case before us is on all fours with and controlled by *Holland*, and that the trial court correctly granted a mistrial. Relator, on the other hand, asserts that this case falls within the holding in *Craik*, and that relator is entitled to have a judgment in accordance with the jury's verdict.

Both *Holland* and *Craik* were handed down by the Supreme Court on the same date, and the Supreme Court referred to such cases as companion cases.

In *Holland*, the parties stipulated that the average weekly wage of plaintiff before and at the time of injury was $100.00. The jury found that the injuries suffered by plaintiff were a producing cause of some partial incapacity. In answer to another special issue, the jury found that the average weekly wage earning capacity during the existence of his partial incapacity was $100.00, exactly the same as his average weekly wage before and at the time of the injury. The Court stated that it was quite clear from the language of the Workmen's Compensation Act that partial incapacity cannot exist unless the average weekly earning capacity after injury is less than the average weekly wage before injury. The Court held that the jury's answers to Special Issues Nos. 2 and 6 could not be reconciled, and that the order of mistrial was proper.

In *Craik*, the parties stipulated that the average weekly wage of the plaintiff before

his injury was $86.80. In Answer to Special Issue No. 9, the jury found that the plaintiff had sustained a partial disability as a result of his injury, but in answer to Special Issue No. 13, found that plaintiff's average weekly wage earning capacity during his disability was $86.80. The trial court held that the jury's answers to these issues, when considered with the stipulation, were in fatal conflict and ordered a mistrial. The Supreme Court held that there was not fatal or irreconcilable conflict in the jury's answer even when considered with the stipulation of plaintiff's average weekly wage. The Court, in discussing the two cases, stated that there was a material difference in the posture of the cases as they came to the Supreme Court, and that the difference lies in the definition of "partial incapacity" as given in the Holland case[1] and "partial disability" as given in the *Craik*, case.[2]

The Court, in *Craik*, stated:

It will be observed that under the foregoing definition the jury could find that the plaintiff has suffered a partial disability without finding that he had suffered 'a depreciation or deduction in his earning capacity.' Under the definition, the jury was authorized to find partial disability if the plaintiff was 'able to procure and retain employment reasonably suitable to his physical condition and ability to work' even though he had suffered no depreciation in his earning capacity.

1. Partial incapacity was defined in the charge as follows:

   'It shall mean where an employee by reason of injuries sustained in the course of his employment is only able to perform part of the usual task of a workman, but nevertheless, is able to procure and retain employment reasonably suitable to his physical condition and ability to work or is only able to perform labor of a less remunerative class than he performed prior to his injuries, whereby he suffers a depression or reduction in his earning capacity.'

2. Partial disability was defined in the charge as follows:

   'By the term "partial disability" is meant disability less than total where an employee, by reason of injuries sustained in the course of his employment, is only able to perform

It is to be noted that the definition of partial incapacity in the case before us is plain and simple—partial incapacity means any degree of incapacity less than total incapacity, whereby a person suffers a reduction in earning capacity. It contains no other alternatives.

As before stated, the special issues submitted to the jury were in accord with the new Texas Pattern Jury Charges, and Special Issue No. 4C is worded exactly the same as PJC 22.12, Earning Capacity During Partial Incapacity (Alternative).[3] The comment contained under such special issue contains the following caveat:

CAVEAT. If the above issue is used, a finding by the jury of average weekly earning capacity which is as much or more than the plaintiff's average weekly wage before the injury would be in conflict with a finding of partial incapacity. See *Employers Reinsurance Corp. v. Holland*, 347 S.W.2d 605 (Tex.1961). See also *Indem. Ins. Co. of No. America v. Craik*, 346 S.W.2d 830 (Tex.1961) (no conflict where partial incapacity defined in terms other than reduction of earning capacity).

We have concluded that under the holding of the Supreme Court in *Holland* and *Craik* and the comment hereinabove referred to in the new Texas Pattern Jury Charges, that the trial court was correct in overruling defendant's motion for judgment and that his order of mistrial was proper. Writ of mandamus is denied.

part of the usual tasks of a workman, but, nevertheless, he is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or he is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depreciation or deduction in his earning capacity.'

3. "Section 11 of Article 8309 [8306] requires determination of the 'difference between [the injured employee's] average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity.' The court may compute this 'difference' by subtracting the amount found in answer to the above issue from the employee's average weekly wage before the injury as determined from the jury's answer . . . or as stipulated by the parties."

CADENA, Justice (concurring).

Our statute follows the format of workmen's compensation legislation in this country by basing compensation payable to a partially incapacitated employee on the difference between actual earnings before the injury and post-injury earning capacity. It is immediately apparent that the two items to be compared are not the same. The pre-injury earnings factor is a relatively concrete quantity which, in the usual case, can be determined by reference to historical data. On the other hand, "earning capacity" is a more nebulous concept. The fact that it is different from wages earned is made manifest by the fact that the Legislature deliberately used different terminology to describe the pre-injury and post-injury factors to be considered in determining the compensation payable.

According to our statute, the amount which is recoverable by an employee who has suffered a general injury resulting in partial incapacity is an amount equal to 66⅔%" of the difference between his *average weekly wages* before the injury and his *average weekly wage* earning capacity during the existence of such partial incapacity . . . ." [Emphasis added.] Tex.Rev. Civ.Stat.Ann., art. 8306, § 11.

Clearly, under the statute, a partially incapacitated claimant is entitled to compensation if, and only if, as a result of his partial incapacity, his earning capacity is reduced to such an extent that he cannot earn as much as he earned prior to the injury. Simply stated, not all depreciation of earning capacity is compensable. If the claimant's actual earnings before the injury do not exceed his post-injury earning capacity, he is not entitled to compensation.

The definition of "partial incapacity" embodied in the trial court's charge in this case precluded a finding of partial incapacity in the absence of a diminution in the claimant's earning capacity. Therefore, the finding of partial incapacity necessarily included a finding of reduced earning capacity. But, if we accept the plain meaning of the statutory language, a finding of reduced earning capacity is not enough to

entitle the claimant to judgment. It does not, standing alone, establish that claimant has suffered a *compensable* reduction in earning capacity. In order to determine whether the reduction in capacity is compensable, it must be determined whether the claimant, because of his partial disability, has lost the capacity to earn as much as he was earning prior to the incapacitating injury. It is, therefore, necessary to submit an additional issue for the purpose of determining the claimant's post-injury earning capacity. In this case, in order to elicit all information required for the purpose of determining whether claimant was entitled to recover and, if so, the amount of such recovery, an issue was submitted requiring the jury to find plaintiff's earning capacity during the period of disability.

If the jury finds that claimant's post-injury earning capacity equals or exceeds the amount he earned prior to the injury, then, according to the statutory formula, he is entitled to no compensation. There is no necessity to discuss the question of conflicting findings. While, given an affirmative answer to the "partial incapacity" issue, claimant has established that he has suffered a reduction in earning power, he has failed to establish that he has suffered a reduction in earning capacity which is compensable under the statute.

The conclusion that the findings in this case relating to partial incapacity and earning capacity conflict to an extent which prevents the entry of any judgment and requires the declaration of a mistrial, therefore, does not rest on the language of the statute as written, but on the judicial rewriting of the statute by a bare majority of the Supreme Court fifteen years ago in *Employers Reinsurance Corporation v. Holland,* 162 Tex. 394, 347 S.W.2d 605 (1961). In that case, five members of our highest tribunal clearly embraced the theory that the purpose of workmen's compensation legislation is to compensate injured employees for any difference in earning capacities before and after the injury. The fact that the pre-injury factor was described in terms of actual earnings rather than earning ca-

pacity presented an obvious obstacle to the adoption of this theory. That is, it was necessary to translate "average weekly wages before the injury" into "average weekly wage earning capacity before the injury." This was accomplished by announcing that the Legislature had created an irrebuttable presumption to the effect that "average weekly wages before injury" is synonymous, as a matter of law, with "earning capacity before injury." 347 S.W.2d at 606. What the *Holland* majority viewed as the impossible task of subtracting post-injury apples from pre-injury oranges was resolved by simply decreeing that pre-injury oranges were, in fact, the same as pre-injury apples. The possibility of avoiding the difficulty by simply recognizing that apples and oranges are both apples and oranges representative of an amount of money was apparently overlooked. The statute does not require that oranges be subtracted from apples. It requires that dollars and cents be subtracted from dollars and cents.

In the ordinary case, the result of subtracting from the dollar amount representing "weekly wages before injury" from the dollar amount representing "weekly wage earning capacity" after the injury will be exactly the same as that reached by subtracting from the dollar amount representing weekly wage "earning capacity before injury" (conclusively presumed to be the same as "weekly wages before the injury") the dollar amount representing "weekly wage earning capacity" after the injury. But where, as is the case here and was the case in *Holland,* the minuend and the subtrahend are equal, the difference in results is startling. Whether we accept the plain meaning expressed by the unambiguous language of the statute, or accept the judicial gloss imposed on such language by the *Holland* majority, the difference is "zero." But, if we apply the statute as written, the result is a judgment denying compensation, while if we apply the statute as rewritten by the *Holland* majority, the unavoidable result is the declaration of a mistrial. Where the situation presents the opportunity to choose between a rule which results in

a judgment and a rule which results in an unproductive expenditure of time and money, it makes little, if any, sense to opt for the rule which, in effect, declares, "It ain't nothing. Do it again."

It would, of course, be presumptuous for an intermediate appellate judge to suggest that the Supreme Court reconsider its holding, since that is a privilege which, apparently is reserved to authors of legal treatises and writers of leading articles, comments, and case notes in law reviews. As long as *Holland* stands, the finding of a conflict in this case of such a nature as to require a retrial is unavoidable. But, perhaps, it would not be at variance with traditional standards of judicial conduct to suggest that the manner of submitting the issues relating to partial incapacity which was used in this case should be avoided, thus eliminating the possibility of conflicting findings. This can be easily accomplished by submitting the issue relating to reduction in earning capacity in the form suggested by the Committee on Pattern Jury Charges. PJC 22.11 (Vol. 2, 1970). As long as "partial incapacity" continues to be defined in terms of reduction of earning capacity, the finding of partial incapacity constitutes a finding of reduced earning capacity, and the sole remaining issue to be determined is the question of the amount of such reduction. If the "earning capacity" issue had been submitted in this case in the form suggested in PJC 22.11, the answer to that issue would have been "$0.00," eliminating the finding of a conflict under *Holland.* Use of this form of submission, of course, would require, in cases where the parties have entered into a stipulation relating to claimant's "average weekly wages before injury," that the jury be told of such stipulation.